## UNITED STATES v. RODENBOUGH.

District Court, E. D. Pennsylvania. August 12, 1927.

No. 11898.

1. **Words and phrases —"Exchange" means the giving of one thing for another, excluding transactions into which money enters.**

"Exchange" means the giving of one thing for another. To constitute an exchange in a legal sense, the mutual transfers must be in kind, and any transaction into which money enters, either as the consideration furnished by one party or as a basis for measuring the value of the thing transferred, is excluded.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Exchange.]

2. **Internal revenue ⟷8(14)—Where decedent deposited proceeds of inherited property in bank and checked it out in payment of securities she held at her death, estate held not entitled to deduction of value of property as received "in exchange for" property inherited within five years (Revenue Act 1918, § 403 (a), subd. 2 [Comp. St. § 6336¾d]).**

Decedent, within five years prior to her death, inherited property from her father, including securities which she sold, and stock of a corporation which was subsequently liquidated. Proceeds of the sales and the liquidation dividends she deposited in her general bank account, with money from other sources, and from that account, during the next two years she checked in payment for other securities which she bought and held, at the time of her death. *Held*, that the value of such securities was not deductible from the value of her estate in computing estate tax under Revenue Act 1918, § 403 (a), subd. 2 (Comp. St. § 6336¾d), as property which could be "identified as having been acquired in exchange for" property received from her father's estate.

3. **Internal revenue ⟷28(2)—Discharge of executor from personal liability for estate tax does not bar suit against him in representative capacity (Revenue Act 1921, § 407 [Comp. St. § 6336¾h]).**

The provision of Revenue Act 1921, § 407 (Comp. St. § 6336¾h), discharging an executor from personal liability for any additional estate tax on payment of amount assessed, does not bar action against him in his representative capacity for such additional tax.

At Law. Action by the United States against Elmer E. Rodenbough, executor of the will of Elizabeth McCahan Rodenbough, deceased. Judgment for the United States.

See, also, 14 F.(2d) 989.

George W. Coles, U. S. Atty., of Philadelphia, Pa.

Porter, Foulkrod & McCullaugh, of Philadelphia, Pa., for defendant.

### Finding of Facts.

KIRKPATRICK, District Judge. The court finds the facts as stipulated and adopts the respective stipulations of fact filed by the parties of record as its findings of fact.

### Conclusion of Law.

The property claimed by the executor of Mrs. Rodenbough as a basis for deduction is not property which can be identified as having been acquired by the decedent in exchange for property received by her as a share in the estate of any person who died within five years prior to her death.

### Opinion of the Court.

This is an action by the United States to recover the sum of $111,852.58 with interest, the balance of a deficiency assessment of estate tax in the estate of Elizabeth McCahan Rodenbough. The Commissioner of Internal Revenue determined a deficiency due of $113,649.70. On appeal from this determination, the Board of Tax Appeals entered an order determining the deficiency to be $1,797.12, which amount was paid by the defendant. This action was thereupon brought to recover the balance of the deficiency determined by the Commissioner, but which had been disallowed by the Board of Tax Appeals.

Mrs. Rodenbough died October 15, 1921. She was a daughter of William J. McCahan, who died within five years prior to her death. Value of Mrs. Rodenbough's share in her father's estate was $3,831,506.22. In the distribution of her father's estate, Mrs. Rodenbough received certain stocks and bonds which are set forth at large in the fourth stipulation of fact, together with certain other securities which remained in her possession until the time of her death. As to these latter, no question is raised, and they were not included in the decedent's gross estate by the Commissioner of Internal Revenue.

All of the securities, particularly referred to in the fourth stipulation of fact, were converted into cash during the lifetime of Mrs. Rodenbough. Some of them were sold by her. Others matured, and were paid off at their maturity dates, Mrs. Rodenbough receiving the cash. In the case of W. J. McCahan Sugar Refining Company (the largest item in the list) this company sold its

assets and distributed their proceeds in liquidation to the stockholders. Mrs. Rodenbough received, as a result of this distribution, $1,296,675 in cash in two installments.

Upon receipt of the proceeds of the sales, maturities, and liquidating distributions referred to, Mrs. Rodenbough deposited the money to her credit in a general banking account in the Philadelphia Trust Company, where the proceeds were mingled with funds derived from other and miscellaneous sources. From time to time, Mrs. Rodenbough invested in other securities, purchasing them by checks drawn against this account. Between the time of the receipt by Mrs. Rodenbough of the securities of her father's estate and the time of her death, she deposited in her bank account from proceeds of sales, maturities, and distributions arising out of the same the sum of $1,716,834.93, and from other and miscellaneous sources the sum of $774,095.14. During that time, she drew checks against her bank balance to purchase other securities referred to in the stipulation of facts in the amount of $1,444,382.-20, and for other purposes the sum of $1,-018,652.48. She also purchased a house for the sum of $100,000, drawing the funds by check from her general account in the Philadelphia Trust Company.

At the time of her death, she was in possession of certain investments which had been purchased in the manner above indicated and paid for by checks drawn upon her general account.

The defendant, her executor, claims a deduction under section 403(a)(2) of the Revenue Act of 1918 (Comp. St. § 6336¾d), representing the greater part of the value of the securities so purchased. This deduction was disallowed by the Commissioner of Internal Revenue and the deficiency in tax arising from its disallowance is the subject of this suit.

Section 403(a)(2) of the Revenue Act of 1918 (40 Stat. 1057) is as follows:

"Sec. 403. That for the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate
* * *

"(2) An amount equal to the value at the time of the decedent's death of any property, real, personal, or mixed, which can be identified as having been received by the decedent as a share in the estate of any person who dies within five years prior to the death of the decedent, or which can be identified as having been acquired by the decedent in exchange for property so received, if an estate tax under the Revenue Act of 1917 or under this act was collected from such estate, and if such property is included in the decedent's gross estate."

The question involved is whether the securities claimed as a deduction constituted property "which can be identified as having been acquired by the decedent in exchange for property so received;" that is, received from the estate of a person who died within five years prior to the death of the decedent.

The plaintiff's position is based upon the strict legal interpretation of the word "exchange." It is contended that property deductible must have been acquired by a transaction constituting an exchange at common law which is equivalent to barter and exclude all transfers of property for money; that the statute limits the deduction to cases where one such exchange only has taken place; that none of the transactions by which Mrs. Rodenbough acquired the property now claimed as a deduction was an exchange; and that therefore the entire question of the identification of these securities as having been purchased with the proceeds of those received from her father's estate is wholly immaterial. On the other hand, it is the position of the defendant that, looking toward the substance of the transactions and not the form, Mrs. Rodenbough's purchase of new securities in substitution for those obtained from her father's estate and subsequently paid off, liquidated, or sold, constituted acquiring property in exchange, and that, by tracing the proceeds through her bank account, the securities claimed as a deduction can be identified as property so acquired.

[1] There is no difficulty about the legal meaning of the word "exchange." It is a word of precise import and sharply distinguished from a sale. "'Exchange' means the giving of one thing for another. It excludes the idea of first measuring the respective things in money value and then settling or paying any difference." Chicago, G. W. R. Co. v. Postal Tel. Cable Co. (C. C. A.) 249 F. 664. "A 'sale' means for money. An 'exchange of property' is a mere barter or trade. The very purpose of money is to have a medium of exchange so that borrowing or trading or bartering can be dispensed with." Ewers v. Weaver (C. C.) 182 F. 713. "But 'exchange' is barter, and carries with it no implication of reduction to money as a common denominator." Postal Tel. Cable Co. v. Tonopah R. R. Co., 248 U. S. 471, 39 S. Ct. 162, 63 L. Ed. 365. Any transaction into

which money enters, either as the consideration furnished by one party or as a basis for measuring the value of the things transferred, is excluded. To constitute an exchange in the legal sense, the mutual transfers must be in kind. So far the contention of the government is correct, and is supported by ample authority.

[2] But we are here concerned with the meaning, not of a single word, but of a phrase, viz. "acquired in exchange for." If the statute referred to property "exchanged," or if the words were "acquired by an exchange," or even "acquired by exchange," the conclusions drawn by the government would undoubtedly follow. But the phrase under consideration has a broader meaning. Thus, in case of a sale, say of a bond for $1,000 in cash, it is perfectly correct to say that the money was acquired or received in exchange for the bond, although the transaction is a sale and not an exchange at all in the legal sense. Courts have even made use of the phrase in question in defining a sale. "Sale means transfer of property in exchange for money or security for money." Brown v. Fitz, 13 N. H. 283. Whatever the strict legal intendment of the word "exchange" may be, the phrase "in exchange for," according to common usage, does not exclude the idea of money as a medium for carrying out the transaction.

On the other hand, it is obvious that, in providing for the deduction in question, the Congress took care to place definite limits upon it. It carefully avoided allowing a general deduction to the amount of the property received from the prior decedent. The phrases adopted to define and limit the scope of the deduction were: "The value * * * of any property, * * * which can be identified as having been received by the decedent as a share in the estate * * * or which can be identified as having been acquired by the decedent in exchange for property so received." In arriving at the intention of Congress in using the latter of these limiting phrases, we may consider the object which it sought to obtain by the section in question and the evil which it endeavored to remedy. In enacting the second subdivision of section 403 (a) of the Revenue Act, providing for the deductions here claimed, Congress unquestionably had in mind the hardship arising from the double taxation of the same or substantially the same estate, which under the old law would arise from the accident of two successive deaths occurring within a comparatively short time. It was the subjection of the same property the second time to the taxing power that in the judgment of Congress called for a remedy. On this point the report of the ways and means committee on the Revenue Bill of 1918, Sixty-Fifth Congress, Second Session, Report 267, accompanying H. R. 12863, is illuminating. That report says: "It has come to the attention of the committee that persons closely related have died within such a short space of time that the same estate passing within a short period of time has been subject to the estate tax and thereby diminished because of the short period within which the two levies have been made." In introducing the bill in the House of Representatives, Mr. Kitchen said: "We have another very just provision that, if a person who receives a share of an estate dies within five years from the death of the person from whom he receives the estate, his share shall not pay another transfer tax within the five-year period."

It is quite true that the tax is not in theory a direct tax upon the property, but upon the right to transmit it; but the tax was as a practical matter usually borne by the property of the estate. It was the depletion of the same estate by the second imposition of a tax that Congress sought to avoid. Another consideration which may also have been present in the adoption of the phrases in question is the practical difficulty in applying the statute and the intricacies of proof involved in tracing funds where property had passed through a number of changes in form, or where money had been commingled with other funds. At any rate, it is clear that, in allowing the deduction, the Congress deemed the substantial identity of the property of the estate sought to be taxed with that received from the prior decedent to be the essential and controlling fact. With this as the paramount purpose in mind, it was entirely consistent and reasonable to extend the deduction to cases where, by reason of the mode of its acquisition, the new property was so closely related with that received as to be essentially the same property, changed in form only, and this is clearly the intent underlying the second clause providing for cases where property had been acquired in exchange for property of the prior decedent. If the language used by the Congress to express its purpose be carefully considered, it will be seen that it is nicely adapted to that object.

These considerations are overlooked by the defendant in his argument as to the meaning of the phrase in question. The result of his contention, so far as it applies to

the facts in this case, is to make the language under consideration equivalent to "purchased with the proceeds of," or perhaps "acquired in substitution for," or "held in the place of," and, thus broadened, it allows a general deduction to the amount received from the estate of the prior decedent, subject only to the condition that the money or property so received be traced in some form into the hands of the executor claiming the deduction. Both the manifest purpose of Congress and the words used negative such a conclusion.

The phrase "acquired in exchange for" has a much more limited scope than those just mentioned. "Acquired in exchange for" means acquired by a transaction which is, in substance, though not necessarily in form, an exchange. It carries the idea of a mutual substitution. The Century Dictionary gives as a definition of exchange, "(4) mutual substitution; return; used chiefly in the phrase *in exchange*." In order to acquire one thing in exchange for something else, there must be something given as well as something received. A thing which has ceased to exist cannot thereafter be exchanged, and no other thing can be acquired in exchange for it. If a house is destroyed by fire and the owner purchases securities with the insurance money, he does not acquire the securities in exchange for the house. If a mortgagor pays off a mortgage, and the mortgagee buys an automobile with the money so received, he does not acquire the automobile in exchange for the mortgage. In those cases, it might properly be said that the property acquired was purchased with the proceeds of the former property or that it is held in place of or in substitution for it, but not that it was acquired in exchange for it. There must also be some definite and reasonably close relation between the giving and the receiving. Where the only facts that can be shown are that property was sold and that some time subsequently other property of approximately the same value purchased, it cannot be said that the property so purchased was acquired in exchange for the property sold, even though it could be shown that it was purchased with the proceeds of the property sold (an element which, as will appear, is lacking in this case so far as the sales and purchases are concerned.

But the defendant argued that, unless his contention be accepted, the result will be that the deduction will be confined to instances of technical exchange or barter at common law. This does not follow, however. Transactions are common enough which may or may not be exchanges in form, but are nevertheless substantial exchanges. For example, where corporate or other debts are refinanced by the giving and voluntary acceptance of new obligations in place of the old, where, by reason of a merger or consolidation, stockholders accept new securities in place of old, or even in cases of sale, through a broker or agent, where the transaction results in a mutual substitution of property, there would be no difficulty in holding that a substantial exchange of property was accomplished.

When we come to examine the transactions by which Mrs. Rodenbough obtained the securities now claimed for the basis of a deduction, we find three general types or classes: (1) Certain corporation bonds matured, were paid off, and she received the cash; (2) the W. J. McCahan Sugar Refining Company sold its assets, liquidated, and paid off its stockholders in cash; (3) she sold certain securities on the market, deposited the proceeds in her general bank account, and subsequently bought other securities. When the corporation bonds were paid off, the rights of Mrs. Rodenbough, which were evidenced by them and which were the real subject of ownership, were extinguished. The same thing occurred when the sugar company liquidated. It makes no difference whether or not the company was actually dissolved. So far as practical results are concerned, the stock ceased to have any value whatever. The fact, if it be a fact, that with the money so received she subsequently bought some of the securities now claimed does not bring those securities within the language of the deduction. They were not acquired in exchange for the matured bonds or for the stock of the sugar company. As to the sales made by her, there is no evidence whatever of any relation between them and the subsequent purchases, except in certain cases the equivalence of the sums of money involved.

The circumstance that these transactions were accomplished through the medium of money does not necessarily exclude them from the deduction. We agree with the argument of the defendant, based upon the rule in U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 53, 66 L. Ed. 180, and other cases, to the effect that, in determining whether a particular transaction is subject to the tax laws, the courts will consistently regard matters of substance and disregard forms. The difficulty with the defendant's position is that, even disregarding the forms of the transactions by which Mrs. Rodenbough obtained the securities now claimed, they were none of them exchanges in substance. The only way in which the statute can be made to cover such

transactions is to give it a meaning which totally ignores the use of the word "exchange" and the purpose for which it was adopted.

There is, however, in the case of the sales and purchases, a further difficulty. Even under the defendant's theory, it would still be necessary to identify the property in question as having been acquired with the funds arising from the sale of the securities which she inherited. This would involve the necessity of tracing the proceeds of the sales, and, when we turn to Mrs. Rodenbough's bank account, as set forth in full in the Thirty-Fifth stipulation of fact, we find that that is impossible. Mrs. Rodenbough sold and bought the securities in question during a period extending approximately from December 17, 1918, down to December 13, 1920. During that period, she deposited from sales of the securities in question $520,159.93, and from other and independent sources, including the money which she had on deposit at the time of the first sale, $609,055.05. She purchased the securities now claimed as a deduction to the amount of $437,898.15, and she drew out, for general expenses and other purposes not connected with the deduction claimed, $501,560.48.

The defendant bases his claim that the proceeds are traceable upon the stipulation that, between the dates of the deposits of money received from sales and the withdrawals in payment for subsequent purchases, the balance in the account was at no time lower than the amount required to make the purchase, and invokes the rule of Knatchbull v. Hallett, 13 Ch. D. 696, and the many trust fund cases that follow it. That rule, however, has no application to this case. It arises from the presumption that, where there has been a tortious commingling by a trustee of trust funds with other funds not subject to the trust, followed by withdrawals, the trustee, in making withdrawals, is presumed to have acted honestly and not wrongfully, and therefore the withdrawals will be presumed to have been of his own money, and what remains will belong to the cestui que trust. Obviously, that presumption does not apply here. Without the benefit of it, however, the defendant cannot trace the proceeds of the securities sold into the securities on hand at the time of Mrs. Rodenbough's death. The burden of showing that the estate is entitled to a deduction with respect to property, which, under the general provisions of the statute, forms part of the gross estate, is upon the defendant, and, in the absence of evidence to establish this fact, there can be no deduction allowed.

21 F.(2d)—50

The defendant further points out that, since the Board of Tax Appeals decided this case, the Revenue Act of 1926 was enacted, containing in section 303, subsec. (a) (2) being 26 USCA § 1095, the identical language construed by the Board of Tax Appeals, and argues that this amounts to an adoption of that construction by Congress. With this conclusion we do not agree. The cases cited by the defendant are all cases where the provisions of the statute re-enacted had received construction by the Supreme Court of the United States. It is also true that there are decisions to the effect that, when the meaning of the statute is doubtful, great weight should be given to the construction placed upon it by the department charged with its execution, and also that re-enactment by Congress without change, of a statute which had previously received long-continued executive construction, is an adoption by Congress of such construction. U. S. v. Cerecedo Hermanos y Compania, 209 U. S. 338, 28 S. Ct. 532, 52 L. Ed. 821. In Iselin v. U. S., 270 U. S. 245, 46 S. Ct. 248, 70 L. Ed. 566, the Supreme Court declined to apply this rule to the case before it, saying: "But the construction was neither uniform, general, nor long continued; neither is the statute ambiguous. Such departmental construction cannot be given the force and effect of law."

In the case before us, the Board of Tax Appeals made its decision January 31, 1925. This decision was contrary to the construction which had been placed upon the provision by the Commissioner for a considerable time. The Commissioner never acquiesced in the view of the Board of Tax Appeals. On December 11, 1925, the statement of claim in this case was filed, based upon a construction contrary to that adopted by the Board. This was the position of affairs when the Revenue Act of 1926 was passed on February 26, 1926. Under these conditions it cannot be said that the re-enactment of the section in question without change was an adoption of the construction placed upon it by the Board of Tax Appeals.

[3] One other matter remains to be disposed of. The defendant argued that, under the limitation provision of section 407 of the Revenue Act of 1921 (Comp. St. § 6336⅞h), this action against the defendant is barred. The discharge from liability provided for by that statute, however, is a discharge from personal liability. This action is not against the executor personally, but against him in his representative capacity as executor of the estate. A judgment rendered

in this action would not subject him directly to any personal liability. If for any reason, as a result of the judgment in this case, recourse against the executor in his personal capacity should be attempted, the question could then be raised. As the record stands at present, it is not involved.

In accordance with the foregoing, judgment may be entered for the plaintiff in the amount of $111,852.58, with interest as claimed in the statement of claim.