**HORLICK v. KUHL, Collector of Internal Revenue.**

Civil Action No. 1232.

District Court, E. D. Wisconsin.
Sept. 5, 1945.

Ralph M. Hoyt, of Milwaukee, Wis., for plaintiff.

Timothy Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Lester L. Gibson, Sp. Assts. to Atty. Gen., for defendant.

DUFFY, District Judge.

This is an action to recover federal estate taxes paid by the estate of William Horlick, Jr. The plaintiff, as administrator de bonis non, is the successor to the executors named in the will.

William Horlick, Jr., died a resident of Racine, Wisconsin, on April 1, 1940. The executors of his will filed a federal estate tax return on June 26, 1941. On the same day they paid to defendant, as collector, the tax shown due by the return in the sum of $939,270.37. They also elected under the statute to value the estate as of April 1, 1941.

On January 7, 1943, the internal revenue agent in charge notified the executors of a proposed deficiency of $164,844.73, which sum was paid on January 16, 1943, together with $15,242.52 interest. On March 4, 1943, a claim for refund in the amount of $380,617.61 was filed by the executors. Six grounds for refund were set forth in the claim. The Commissioner of Internal Revenue took no action within six months thereafter, and the plaintiff then commenced this action based upon the same six grounds which were alleged in the claim for refund.

Claims 1, 5 and 6 arise from the action of the commissioner which resulted in the deficiency assessment. Claims 2 and 3 arise from a reconsideration by the executors of their own original computation. Claim 4 concerns the value of the corporate stock of Horlick Malted Milk Company. The executors claim that the valuation they placed upon said stock in the return was too high while the commissioner claims it was too low.

### Claim 1

Claim 1 is based upon the refusal of the commissioner to recognize as property previously taxed within the meaning of Sec. 812(c), Internal Revenue Code, 26 U.S.C. A. Int.Rev.Code, § 812(c), certain assets which plaintiff claims were included in the gross estate of William Horlick, Sr.

William Horlick, Sr., the father of William Horlick, Jr., died a resident of Racine, Wisconsin, on September 5, 1936. His executors filed an estate tax return reporting a gross estate of $17,000,000, on which they paid an estate tax of approximately $7,000,000. In the return the executors disclosed certain gifts made by the decedent to his wife and three children but they disclaimed any tax liability on account of such gifts.

William Horlick, Sr., made the gifts to his wife and three children between May 9, 1931, and June 2, 1932. A gift of $150,000 to his wife was in cash. All of the other gifts were of securities. All were outright gifts except those of June 2, 1932, whereby $1,383,058.18 was given to each child in trust.

The internal revenue agent in charge, valuing the gifts at $8,054,205.89, made tentative findings and proposed a deficiency assessment of $4,190,738.22. A protest to same was filed on January 31, 1940. A conference with representatives of the estate was held on March 25, 1940, to consider this protest. Following the conference

a letter was mailed to the executors of the estate of William Horlick, Sr., showing the conclusions reached after consideration of the objections to the tentative findings. Suggestion was made in the letter that if it were desired to have the matter referred to the Technical Staff of the Bureau prior to the issuance of final notice of deficiency, such reference would be made. Plaintiff requested a conference with the Chicago Division of the Technical Staff and conferences were held in the Milwaukee office of that staff on May 2, June 13, June 20 and June 21, 1940, and a compromise agreement was effected. The Technical Staff was represented by Milton E. Carter, Head of the Chicago Division of the Technical Staff, and E. J. Nelson, Technical Adviser. Mr. Carter had full power upon behalf of the Commissioner of Internal Revenue to settle the disputed tax on a compromise basis.

The right to a deduction for property previously taxed is provided for in Sec. 812(c) of the Internal Revenue Code. That section provides that if there is included in a decedent's gross estate property received by him from any person within five years prior to his death, or received by gift, bequest, devise or inheritance from any person who died within five years prior to his death, a deduction may be taken by the estate of such decedent subject to certain conditions. Those conditions here pertinent are: (1) The property respecting which the deduction is sought must have been received by the decedent within five years of his death; (2) the property must be identified either as the same property which decedent so received or as property acquired in exchange thereof; (3) the property must have formed a part of the gross estate of the prior decedent; (4) an estate tax must have been paid by such prior estate; and (5) the deduction is limited as to the value of the property or to the aggregate value of such property if more than one item, as finally determined for the purpose of the prior estate tax, or the value of such property, or aggregate value of the items thereof included in the present decedent's estate, whichever is lower.

■ Congress sought to avoid the payment of a federal estate tax on property more than once in a five year period. It follows that if property was not included for federal estate tax purposes in the prior estate it is not to be deducted as previously taxed property in the second estate. The mere fact that a prior decedent owned certain property which was received by gift or bequest by the second decedent does not in itself entitle the latter to a deduction. The property must have formed a part of the taxable estate of the prior decedent.

The principal issue, therefore, is whether the compromise agreement provided that all the transfers of property made by William Horlick, Sr., to his children were included in his gross estate at one-half their actual value or whether only an undivided one-half interest in such transfers was included in the taxable estate of William Horlick, Sr., thus eliminating an undivided one-half interest therein. The government asserts that only one-half of the transfers of William Horlick, Sr., to his children formed a part of his gross estate and that an estate tax was paid on only that one-half. The government argues that since the deduction is limited to the value of the property, to have included it at one-half its value would have been contrary to the letter of the statute which provides "for the purpose of the tax the value of the net estate shall be determined" and that, therefore, it would have been illegal to have included such transfers at one-half their value. Defendant further contends that the value of the securities involved was established by their price on the security markets and that there could be and was no question as to what their value was on the critical date.

Plaintiff contends that as a compromise to avoid a lawsuit the government officials representing the Commissioner of Internal Revenue did agree that all of the gifts in question be considered as part of the senior William Horlick's gross estate but that for the purpose of the tax only a fifty percent value thereof would be considered. He argues that on the dates when the gifts were made William Horlick, Sr., could not have been testamentary minded about half of the gifts made on that day and not so minded as to the other half.

■ Since the statute which relates to property previously taxed grants a specific credit in the nature of a deduction, the plaintiff must sustain the burden of showing compliance with its terms. Statutes exempting from taxation are strictly construed in favor of the government. Bank of Commerce v. State of Tennessee, 161 U.S. 134, 16 S.Ct. 456, 40 L.Ed. 645. The extent to which deductions shall be al-

lowed depends upon legislative grace and only if there is a clear provision therefor can any particular deduction be allowed. New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

Early in the conferences looking to the settlement of the dispute, it was determined that the gifts made by William Horlick, Sr., to his wife were not made with testamentary intent. The discussion then continued with reference to the gifts to the three children which totaled $7,654,371.98. The representatives of the estate demonstrated that it would not be feasible for the estate to pay anything substantially in excess of $2,000,000 in additional taxes, and the conferees directed their energies toward ascertaining what changes in the size of the estate would produce a tax deficiency of about $2,000,000. Both Carter and Nelson, who represented the Commissioner of Internal Revenue in the conferences, testified upon the trial, and both were emphatic in their statements, that the matter was compromised and settled by excluding one-half of the gifts as not having been made in contemplation of death and including one-half as having been so made.

It would seem more logical that the conferees would agree to include a fractional part of the property in question at its fair market value rather than include all of the property at less than its fair market value, and I am convinced that the officials representing the government so understood the agreement. Furthermore, on August 6, 1940, the Commissioner of Internal Revenue sent a letter to the executor of the senior William Horlick's estate. It was his final determination. A statement of settlement was enclosed which detailed the manner in which the gifts of William Horlick, Sr., to his children were handled in the settlement. It stated:

"Explanation of Items Changed

"The net estate as shown by the preliminary letter dated April 5, 1940, is adjusted as follows:

"(a) *One-half of the gifts* made by the decedent during the years of 1931 and 1932 to his adult children, but not including the gifts made to his wife, have been treated as constituting transfers of property made by the decedent in contemplation of death. * * *" (Italics supplied)

■ It is thus apparent that a month prior to the transmittal of the final letters to the administrator and to counsel for the estate all were fully advised of the commissioner's final determination. There is no evidence to show any changes in this settlement. The commissioner's findings are prima facie correct and the taxpayer has the burden of proving them wrong. Wickwire v. Reinecke. 275 U.S. 101, 48 S. Ct. 43, 72 L.Ed. 184; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212.

There was a marked decline in the value of the stock of Horlick's Malted Milk Corporation between the date of the death of William Horlick, Sr., and that of William Horlick, Jr. Sec. 812(c) of the Internal Revenue Code limits the deduction for property previously taxed within the five year period to the aggregate value of such property as finally determined in the prior estate or to the aggregate of such property included in the second estate, whichever is the lower. If the value of the Horlick Malted Milk Corporation stock had not declined, no serious dispute would confront us at this time. Nothing about all of the circumstances surrounding the meetings which resulted in the compromise would lead to the conclusion there was any basis other than that set forth in the statement of settlement hereinbefore discussed.

■ I, therefore, find that the settlement, in fact, excluded one-half of the gifts made to the children of William Horlick, Sr. and, therefore, that such gifts were not included in his gross estate.

### Claim 2

Plaintiff presents no argument as to Claim 2, admitting that his previous position with reference thereto is now untenable due to the decision of the Supreme Court in Rogers v. Helvering, 320 U.S. 410, 64 S.Ct. 172, 88 L.Ed. 134, decided after the commencement of this action.

### Claim 3

Claim 3 arises from the fact that certain securities were given to decedent and at least a portion thereof were included in the father's gross estate as gifts in contemplation of death. These securities were sold by William Horlick, Jr., for $342,350 and he placed the proceeds in the same bank account in which he kept his other funds and from which bank account he made purchases of new securities, as well as withdrawals for all other purposes. Plaintiff claims to have traced the proceeds of the old securities into the ones held by dece-

dent at the time of his death, and thus to be entitled to include the new securities in the category of "property previously taxed." Prior to the final determination of the deficiency, the government allowed this claim to the extent of $101,754.08, but disallowed the balance.

The shadow of Claim 1 falls across Claim 3. Certain joint stock land bank bonds which William Horlick, Jr., received from his father were sold by him in March and April, 1934, and in November, 1935. During that period he purchased new securities which he held at the time of his death. The government, consistent with its position with reference to Claim 1, refused to concede that the entire proceeds of the bonds came from previously taxed property, because only one-half thereof was included in the gross estate of William Horlick, Sr. To this extent, the ruling herein as to Claim 1 must govern. As to the remaining half of the proceeds, the government applied what is known as the Rodenbough rule of apportionment.

William J. Horlick, Jr., received $167,350 from bonds which he sold between March 9 and April 6, 1934, and he received $175,000 from bonds which were called for redemption on November 1, 1935, or a total of $342,350. The sales during what may be designated as the first period were made on March 9, March 23, and April 6. The program of reinvestment began March 27 and continued to May 26. Just prior to the first sale, the balance in William Horlick, Jr.'s bank account was $2,732. During the period it rose to $197,700. At the close of the period it was $17,712. The relationship between the transactions is shown below.[1]

The evidence shows that on each of the dates of the purchase of new securities, except the last, May 26, there was enough money in the bank account derived from the sale of previously taxed securities to provide all of the funds for the purchase of new securities. On May 26, when City of Fresno bonds were purchased for $27,500, only $16,396.57 was left in the fund from previously taxed securities, the remaining $11,103.43 coming from other sources.

The only sale in the second period, from November 1, 1935, to February 24, 1936, was when the remaining Chicago Joint Stock Land Bank Bonds were called for redemption on November 1, 1935, at $175,000. Five days later the program of reinvestment commenced and continued until February 24, 1936. Just prior to the redemption of the bonds the bank balance was $5,195.72. It was increased to about $180,000 by the deposit of November 1. As new investments were made it gradually declined until at the close of the period it stood at $10,734.20. The relationship on the transactions is shown below.[2]

| | | |
|---|---:|---:|
| [1] Balance on hand March 8, 1934 | | $ 2,732.34 |
| Deposits from proceeds of securities sold | $167,350.00 | |
| Deposits from other sources | 40,158.95 | |
| Total deposits | | 207,508.95 |
| Total | | $210,241.29 |
| Withdrawals for purchase of securities | 178,453.43 | |
| Withdrawals for other purposes | 14,075.26 | |
| Total withdrawals | | 192,528.69 |
| Balance on hand May 26, 1934 | | $ 17,712.60 |
| [2] Balance on hand October 31, 1935 | | $ 5,195.72 |
| Deposits from proceeds of securities sold | $175,000.00 | |
| Deposits from other sources | 12,147.50 | |
| Total deposits | | 187,147.50 |
| Total | | $192,343.22 |
| Withdrawals for purchase of securities and annuities | 163,522.50 | |
| Withdrawals for other purposes | 18,086.52 | |
| Total withdrawals | | 181,609.02 |
| Balance on hand February 24, 1936 | | $ 10,734.20 |

The evidence discloses that on each of the dates of the purchase of new securities or annuities in the second period, sufficient money was in the bank account from the redemption of the previously taxed bonds to provide all the funds for the purchase of the new securities and annuities. ·

 The Rodenbough rule of apportionment which is advocated by the government is based upon United States v. Rodenbough, 15 A. F. T. R. 551, and Rodenbough v. United States, 3 Cir., 25 F.2d 13, 57 A.L.R. 1091. See also United States v. Rodenbough, D.C., 21 F.2d 781. In determining the question of whether William Horlick, Jr., purchased the new securities with the proceeds of the old ones only, or whether he used funds partly or wholly from other sources, the Rodenbough rule holds the taxpayer to the lowest possible benefit in such a situation. In effect, it assumes that all purchases of new securities were made from moneys not derived from old securities as long as there is enough of such miscellaneous money in the account. The Rodenbough rule was followed by the District Court for the Southern District of New York in Farmers' Loan & Trust Co. et al. v. United States, 1932, 60 F.2d 618, but, apparently, has not been adopted in any other decision. However, the Board of Tax Appeals, now the Tax Court, has adopted a different rule. Ankeny v. Commissioner of Internal Revenue, 1928, 9 B.T.A. 1302; Appeal of Northern Trust Co., Ex'r (Estate of Underwood), 1928, 9 B.T.A. 1310; Bingham, Ex'x v. Commissioner of Internal Revenue, 1929, 15 B.T.A. 1001; Brawner, Ex'x v. Commissioner of Internal Revenue, 1929, 15 B.T.A. 1122; Rolfe, Ex'r v. Commissioner of Internal Revenue, 1929, 16 B.T.A. 519; Miller v. Commissioner of Internal Revenue, 1944, 3 T.C. 1180. An examination of these cases shows that the rule followed by the Board of Tax Appeals and the Tax Court has been (1) that where the proceeds of the securities sold were deposited in a general bank account and new securities were promptly purchased, the value of the new securities is fully deductible so long as the amount expended for them did not exceed the proceeds of the old ones; (2) that where the amount expended for the new securities does exceed the proceeds of the old ones, the proper deduction from previously taxed property is in the ratio which the proceeds of the old securities bear to the total purchase price of the new

ones; and (3) that where the securities sold are partly previously taxed and partly non-previously taxed, the investment in new securities is deductible to the extent of the proportion of previously taxed securities contributing to the fund for investment. The decision of the District Court for the Eastern District of Massachusetts in Wiggin v. Hassett, 1944, 56 F.Supp. 263, although not on all fours with the case at bar, follows the principles laid down in the Board of Tax Appeals and Tax Court cases hereinbefore cited.

Mr. Horlick was an experienced investor. It was not necessary for him to seek investment advice. During the period in question he was receiving no salary as an executive of the Horlick Malted Milk Corporation. His bank account prior to depositing the proceeds from the sale of previously taxed securities was quite low. How can there be any doubt that he intended to purchase the new securities from the proceeds of the sale of the old? To apply the Rodenbough rule would not be realistic. It would not be in accord with human experience. ·In fact, it would be entirely unreasonable and unrealistic to assume, as would be required by the application of that rule, that Mr. Horlick intended to buy the new securities from the miscellaneous money he received from other sources and that he intended that the money derived from the sale of the securities be used in paying his living and other miscellaneous expenses.

 I think that the correct and just rule to follow is that Mr. Horlick intended to purchase new securities with the proceeds of the old securities, and that in so far as he did so, the value of one-half of the securities is fully deductible so long as the amount expended for them did not exceed the proceeds from the sale of those securities that can properly be designated as having formed a part of the gross estate of William Horlick, Sr. In any event, a new computation as to Claim 3 must be made giving effect to the decision heretofore made herein as to Claim 1, and applying the rule as hereinbefore indicated.

### Claim 4

Claim 4 involves the value of certain stock of Horlick Malted Milk Corporation. At the date of his death, William Horlick, Sr., was the owner, through an intermediary corporation, of all the stock of the Malted Milk Corporation, consisting of

20,000 shares of the par value of $100 each. His will placed the stock in trust for the benefit of his three children.

No Horlick Malted Milk Corporation stock was ever sold prior to the death of William Horlick, Jr., in 1940. It had been and was a one-man corporation. William Horlick, Sr., the founder of the corporation, owned all of the company's stock from the beginning of its existence to the day of his death. The stock was neither listed nor available on any market, and there is no evidence of any offer for its purchase or sale by anyone.

Horlick Malted Milk Corporation was the pioneer manufacturer of malted milk in the United States. For several years after the close of World War I it was producing 68% to 73% of all of the malted milk manufactured in this country. It then met powerful competition from large companies with diversified business, such as Borden, National Dairy, Carnation and Kraft. Horlick's share of the national production slipped to 51% and continued on down until in the decade of 1930–1940 it fell to as low as 10%. In 1940 it was 12%. In 1920 the company manufactured 13,-130,000 lbs. out of a total of 19,715,000 lbs. produced in that year. In 1941 it manufactured only 2,667,000 lbs. out of a total in excess of 23,000,000 lbs. For several years in the early 1920's the company had net annual earnings in excess of $1,000,000. The loss from operations in the period of 1932 to 1941, inclusive, was $2,306,493. After giving effect to the earnings of the company's investment securities, the company's loss for that period still exceeded 1¾ millions of dollars. The company's investment securities at the time of the death of William Horlick, Sr., aggregated $1,809,810. These had dwindled to $498,377 at the valuation date of April 1, 1941. After the United States entered the war, the company showed a profit in 1942 and 1943, but operated in 1944 at a loss.

The company made only a single product. It had no diversification of business. It was forced in 1938-1939 to reduce the price of its product at the factory from 54¢ to 35¢ a pound, and in 1941 to 32¢ a pound.

The testimony shows that malted milk produced by some of its competitors could be purchased at retail stores from 26¢ to 33¢ a pound.

With this bleak outlook in 1941, what would a willing buyer have paid for the interest of the estate of William Horlick, Jr., in the testamentary trust whose corpus was composed entirely of stock of the Horlick Malted Milk Corporation? Any such purchaser would have no right to vote the stock. That right was in A. J. Horlick, Trustee. The purchaser would, of course, be entitled to any dividends declared, but for ten years previous thereto the company had operated each year at a substantial loss. One witness of wide investment experience testified that in his opinion the value of the stock on April 1, 1941, did not exceed $45 a share. Another of equally wide experience valued it at $25 a share.

In view of the lack of earnings by the company over a long period, the two experts availed themselves of a provision of the Estate Tax Law enacted by Congress in 1943, Sec. 811(k) of the Internal Revenue Code, as amended by Sec. 501 of the Revenue Act of 1943, 26 U.S.C.A. Int.Rev. Code § 811(k).[3] Although this section was not in force on April 1, 1941, it was a well recognized test before it was put in statutory form.

The Internal Revenue Agent in Charge, in arriving at his deficiency assessment, fixed the value of the stock at $93.70 per share. The executors in their estate tax return placed the value at $75.32 per share. The executors used the same method that had been used by the County Court appraiser in valuing the stock at date of death, April 1, 1940. They simply projected that value one year later. Their sole basis of arriving at the value was the balance sheet of the corporation with certain adjustments.

The rule for valuation of stock in a corporation of the type of Horlick Malted Milk Corporation appears in Sec. 81.10 of Regulation 105: "If actual sales or bona fide bid and asked prices are not available, then * * * in the case of shares of

---

[3] "In the case of stock and securities of a corporation the value of which by reason of their not being listed on an exchange and by reason of the absence of sales thereof, cannot be determined with reference to bid and asked prices or with reference to sales prices, the value thereof shall be determined taking into consideration, in addition to all other factors, the value of stock or securities of corporations engaged in the same or a similar line of business which are listed on an exchange."

stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock."

The government makes much of the testimony of A. J. Horlick given in the County Court of Racine County where the Horlick trust accepted 5,900 shares of the stock of Horlick Malted Milk Corporation from the executor in part payment of a $900,000 loan at an agreed valuation which amounted to $85.78 per share. However, this was a family transaction, between parties having identical interests. It was practically a bookkeeping transaction and not a sale at arm's length, and even in those days memories of annual earnings in excess of a million dollars undoubtedly still lingered. It is interesting to note that in the following year A. J. Horlick paid $35 per share for stock in this corporation.

 I find that on April 1, 1941, the value of the interest owned by the estate of William Horlick, Jr., in the testamentary trust consisting of stock of the Horlick Malted Milk Corporation was not in excess of $50 per share, or a total of $235,000 for the 4,700 shares.

### Claim 5

 Mabel Horlick Sidley, the sister of William Horlick, Jr., died July 6, 1938. In her will she bequeathed $100,000 to William Horlick, Jr. At the time of the latter's death the legacy had not been paid. In the estate tax return the executors claimed it to be previously taxed property, on the theory that when paid the legacy would come from property included in the gross estate of Mrs. Sidley on which an estate tax was to be or had been paid. The Internal Revenue Agent in Charge disallowed the claimed deduction. Actual payment of the legacy was made on March 29, 1943, in the sum of $105,935.43, being the amount of the legacy and a portion of the interest accrued thereon.

In arranging for payment of the legacy the executors of the Horlick and Sidley estates took care to select two items of assets in the Sidley estate which had not been previously taxed in the father's estate. Payment was made by a certificate of deposit for $85,835.43 and a check for $20,000. At the trial the government conceded that $80,000 had been sufficiently identified. To avoid further extending this long opinion, it will suffice to say that I have examined the government's contention as to the balance which it claimed not to be identified and I cannot sustain such contention. The entire legacy given to William Horlick, Jr., by the will of his sister has been sufficiently identified by the plaintiff as property which formed part of the gross estate situated in the United States of a prior decedent whose death preceded that of William Horlick, Jr., by less than five years and on whose estate an estate tax was paid. Plaintiff is entitled to have the legacy of $100,000 included as a component of the aggregate value of all the property previously taxed in said estate, as of April 1, 1941, at the sum of $100,000.

### Claim 6

Claim 6 has been withdrawn by the plaintiff.

The attorneys for the defendant will prepare findings of fact and conclusions of law in accordance with this opinion and will settle same on five days' notice.