George P. HIGBIE, Plaintiff-Appellee,

v.

H. O. JOHNSON, Defendant-Appellant,

and

Vade Hollingsworth, Defendant-Appellee.

No. 78–749.

Colorado Court of Appeals,
Div. III.

Oct. 2, 1980.

Rehearing Denied Oct. 30, 1980.

Certiorari Denied March 30, 1981.

Pleasant, Peck & Lawrence, R. H. Peck, Craig, for plaintiff-appellee.

Robert J. Safranek, Limon, for defendant-appellant.

Jack A. Holst, Colorado Springs, for defendant-appellee.

BERMAN, Judge.

In this breach of contract action, defendant H. O. Johnson appeals two adverse judgments, one in favor of plaintiff George P. Higbie and the other in favor of defendant Vade Hollingsworth on his cross-claim. We affirm the Hollingsworth judgment. We modify the Higbie judgment, and affirm it as modified.

Higbie owned a ranch in Moffat County which he wanted to sell. Hollingsworth wanted to acquire the Moffat County ranch, but wanted it on a tax-free exchange basis for a ranch owned by him in Lincoln County. Johnson wanted to buy the Lincoln County ranch.

To accomplish these ends, the three men, after negotiating, signed a letter agreement on August 4, 1976. This agreement provided that Johnson would buy the Moffat County ranch from Higbie for a purchase price of $498,000 (cash in the amount of $144,420, assumption of a first deed of trust for $135,468, and execution and delivery of a note and second deed of trust for $218,112). At the same time, Johnson would buy the Lincoln County ranch from Hollingsworth at a price of $502,775 ($20,000 in cash, assumption of a first deed of trust of $119,000, execution of a $219,355 note, and conveyance of the Moffat County ranch for the $144,420 equity). Hollingsworth, in acquiring the Moffat County ranch from

Johnson, would assume the existing first and Johnson's new second deed of trust and the note secured thereby. Closing was agreed to be on October 4, but was later extended to November 18. The letter referred to formal contracts being executed later, but no subsequent agreement was signed.

On August 5, Johnson, as the only party from whom cash was required at closing, deposited $50,000 in escrow as required by the agreement. Johnson was given immediate possession of the Lincoln County ranch. Higbie vacated and Hollingsworth took possession of the Moffat County ranch on August 15 and moved his cattle there on November 6.

At the November 18 closing, Higbie and Hollingsworth were ready to close. Johnson was unable to perform because he did not have the money available. He asked for and was refused a 60 day extension.

Johnson vacated the Lincoln County ranch by March 1977. Hollingsworth remained in possession of the Moffat County ranch. After efforts by both Johnson and Hollingsworth, the Lincoln County ranch was finally sold on April 7, 1978. At that time, a third party bought the Moffat County ranch on the same terms and at the same $498,000 price as in the August 1976 agreement, and it was then traded to Hollingsworth for his Lincoln County ranch but at a trade value for the Lincoln County property of $443,000 instead of the earlier $502,000.

In January 1977, Higbie declared the August 1976 agreement breached and commenced this action against Johnson and Hollingsworth. Hollingsworth cross-claimed against Johnson. After a trial to the court, Higbie's claim against Hollingsworth was dismissed and judgments were entered against Johnson in the amounts of $59,750.88 for Higbie and $64,123.78 for Hollingsworth, plus costs. The escrow funds were to be divided equally between the two, with the balances of the judgments to be reduced accordingly.

## I.

■ On appeal, Johnson first contends that the court erred in finding that the August 1976 agreement constituted a binding contract. We agree with the trial court.

■ The August agreement is sufficient to satisfy the requirements of the statute of frauds, § 38–10–108, C.R.S.1973. *Micheli v. Taylor*, 114 Colo. 258, 159 P.2d 912 (1945). Whether the agreement is a contract depends on the circumstances of the case. *Coulter v. Anderson*, 144 Colo. 402, 357 P.2d 76 (1960). As found by the trial court, the agreement:

> "fixes the purchase price or exchange value for each property, it describes the respective purchasers and sellers for each, sets forth by reference and incorporation a description of the property and the interests to be conveyed, generally sets forth the terms of payment, sets forth the parties' agreements for possession of the respective properties, and calls for closing 'within 60 days.'"

In addition, the record reveals that Higbie insisted on either terminating negotiations or entering a binding agreement on August 4 and such an agreement was signed; each of the parties testified that he considered the agreement binding; and, subsequent to signing the agreement, Johnson deposited $50,000 in earnest money in escrow, possession of the ranches was granted and taken, and abstracts were prepared for closing.

Johnson contends, however, that the failure to agree on a proration date and the reservation of the matter and terms of partial releases of the Hollingsworth and Higbie properties for further negotiation constitute defects fatal to the existence of a contract. With respect to the proration date, the court found that each party testified that he anticipated prorations would be made according to custom at the date of closing. Because the proration date could be supplied to the contract by "presumption, rule, or custom and usage," *see Shull*

*v. Sexton*, 154 Colo. 311, 390 P.2d 313 (1964), the failure to agree was not fatal. With regard to the partial releases, the court found that Higbie and Hollingsworth, and not Johnson, were the parties obliged to furnish releases, and such releases were arranged for.

The trial court properly determined that a binding contract existed. *See Coulter v. Anderson, supra.*

## II.

Johnson's other contentions for reversal concern the damages assessed against him.

### A. *Hollingsworth*

■ Johnson contends first that the trial court's finding of the market value of the Lincoln County ranch on the date of breach is not supported by the evidence. We do not agree.

The appraisal evidence introduced at trial indicated that the fair market value of the Lincoln County property on the date of breach was between $448,000 and $507,000. Furthermore, both Hollingsworth and Johnson made bona fide and diligent efforts to sell the property subsequent to the breach. During this period, approximately $435,000 was bid at an auction sale and the best offer made through a broker was $464,750. Both of these offers would have been subject to auctioneer's or broker's commissions, and would have netted less than the ultimate sale at $443,000.[1] Therefore, the court's finding that the fair market value at date of breach was $452,750 is amply supported.

Johnson's other contention is that these transactions constituted an exchange of properties for Hollingsworth's benefit and that, therefore, the proper measure of damages is the difference in the equities in the two properties at the date of breach. However, an examination of the agreement between the parties shows that these transactions were sales and not an exchange.

---

1. Resale price of the property following the breach is evidence of the market value at the time of the breach, but is not conclusive evidence thereof. *Sorenson v. Connelly*, 36 Colo. App. 168, 536 P.2d 328 (1975).

■ An exchange "carries with it no implication of reduction to money as a common denominator." *Postal Telegraph-Cable Co. v. Tonopah & Tide Water R. R.,* 248 U.S. 471, 39 S.Ct. 162, 63 L.Ed. 365 (1919). Here, where the purchase price of both properties was negotiated and agreed upon by the parties at a stated figure, and the purchase price was to be paid by assumption of notes, cash, buyer to seller promissory notes, and equities in land at a prenegotiated fixed price, the bargain is made, the value is measured in terms of money, and the transaction is a sale. *Topgant v. Koshe,* 242 Wis. 585, 9 N.W.2d 136 (1943); *Hawn v. Malone,* 188 Iowa 439, 176 N.W. 393 (1920).

■ The proper measure of damages in the Johnson-Hollingsworth Lincoln County ranch transaction is that utilized by the trial court—the contract price for that ranch less its fair market value at the date of breach ($50,000), *see F. Poss Farms, Inc. v. Miller,* 35 Colo.App. 152, 529 P.2d 1343 (1974), plus out-of-pocket expenses for the period from November 18, 1976, to April 7, 1978, which he would not have incurred had the transaction closed pursuant to the agreement. These properly included interest on the existing encumbrance ($13,-538.97), taxes ($1,297.81), state lease payment ($48.50), and insurance ($188.50), less a credit ($950) for oil and gas lease payment received during the period. The court correctly did not allow abstracting costs and attorney fees incurred in preparation for the closing, since these items of expense would have been incurred even if the contract had been fully performed. *See Royer v. Carter,* 37 Cal.2d 544, 233 P.2d 539 (1951); *Andreasen v. Hanson,* 8 Utah 2d 370, 335 P.2d 404 (1954).

The court also held Hollingsworth entitled to recover for the unsuccessful auction sale and advertising expenses, but inadvertently omitted the amount thereof from the amount of the judgment. Also, no additional damages were assessed for reasonable rental for the period Johnson was in possession. *See Poss Farms, supra.* However, since Hollingsworth did not cross-appeal, we will not remand for imposition of additional damages in his favor.

## B. *Higbie*

■ Higbie, as seller of the Moffat County ranch, is entitled to an award of damages from Johnson "sufficient to place [Higbie] in the position he would have occupied had the breach not occurred." *Taylor v. Colorado State Bank,* 165 Colo. 576, 440 P.2d 772 (1968); *Coon v. Ginsberg,* 32 Colo.App. 206, 509 P.2d 1293 (1973). Accordingly, Higbie is entitled to the following: (1) "the full contract price minus the market value of the land at the date of breach and also minus any payment received," *Poss Farms, supra*; (2) the actual out-of-pocket expenses the trial court specifically found Higbie to have incurred during the period from the aborted closing date to the time of eventual sale, which expenses Higbie would not have incurred but-for Johnson's breach, including: interest on the existing encumbrance Johnson contracted to assume; interest, costs, and attorney's fees on the new loan Higbie procured to make the required principal payments on the old loan Johnson assumed but failed to pay; insurance, taxes, and lease payments, less oil and gas lease payments; and (3) interest on the balance of the purchase price (the cash, and the new note both of which constituted consideration for the sale beyond Johnson's assumption of the old encumbrance) from the date of aborted closing until the date of eventual resale. *Poss Farms, supra.*

Such an award is necessary, as the trial court correctly perceived, to accord Higbie the "benefit of the bargain," *Sorenson v. Connelly,* 36 Colo.App. 168, 536 P.2d 328 (1975), and compensates for his having been, *for the stated period,* out of possession of the ranch, without any economic benefit that might have derived from the property, and without the use of the purchase money for which he contracted. *Poss Farms, supra.* *See also Bembridge v. Miller,* 235 Or. 396, 385 P.2d 172 (1963); *annot.,* 25 A.L.R.2d 951.

Appellant, however, cites *Poss Farms* for the proposition that damages are limited to selling price less value at date of breach. Appellant misinterprets *Poss Farms.* In

*Poss Farms*, this court said that "the seller should receive interest on the unpaid balance of the contract during the period of time *buyers were in possession of the property as reasonable rental.*" (emphasis added). Although here Hollingsworth rather than Johnson was in possession of the Higbie property, interest on the unpaid balance of the contract is, nevertheless, properly chargeable to Johnson rather than Hollingsworth.

This conclusion follows upon the special circumstances of this case, to-wit: pursuant to the contract, Johnson himself was in possession of the Hollingsworth property *but only because Hollingsworth was able to be in possession of the Higbie property.* Thus, Johnson's possession of the Hollingsworth property was the *functional equivalent* of his being in possession of the Higbie property.

Since Hollingsworth's occupancy of the Higbie property freed his own property for Johnson's occupation, Johnson received indirect economic benefit from the Higbie property's occupation.

Moreover, as the evidence showed and the trial court pointed out, Johnson's and Hollingsworth's respective possessions continued beyond the date of breach because the parties evinced a willingness to maintain the status quo that had developed in accord with the contract terms. That status was preserved while all the parties sought a substitute buyer for Johnson. Such an informal arrangement was a natural one, for the parties had substantially reordered their affairs based upon expectations supported by the contract.

In particular, the trial court found Hollingsworth initially to have occupied the Higbie ranch under claim of right. Additionally, he incurred expense in relocating his cattle and belongings onto that land in justifiable reliance on the contract Johnson breached. Because the parties mutually consented to treat the contract as being temporarily in effect, the trial court was justified in finding special circumstances which rendered Johnson liable to Higbie for interest accrued during that period of time.

The court, in its award, properly included the actual out-of-pocket expenses incurred and the interest on the balance of the purchase price during the period from the aborted closing date to the time of the eventual sale. It did not include an amount equal to the contract price less the market value of the land at date of breach. However, since Higbie did not cross-appeal, we will not remand for imposition of additional damages in his favor.

Since the abstracting costs and attorney fees incurred in preparation for the 1976 closing, would have been incurred by Higbie even if the deal had gone through, the court erred in including these items in the award. Therefore, the Higbie judgment should be reduced in the amount of $409 representing the abstracting fees, and $2,770.68 representing attorney's closing fees.

The order that the $50,000 in escrow be applied equally to the damages owing to Higbie and Hollingsworth has not been challenged, so it remains unchanged.

The judgment in favor of Hollingsworth is affirmed. The judgment in favor of Higbie is reduced in the amount of $3,179.68, and, as so modified, the judgment in favor of Higbie is affirmed.

PIERCE, J., concurs.

VAN CISE, J., concurs in part and dissents in part.

VAN CISE, Judge, concurring in part and dissenting in part:

I concur with sections I and IIA (Hollingsworth) of the majority opinion. Also, I agree with all of section IIB (Higbie) except for the inclusion of interest on the balance of the purchase price (the cash, and the new note).

Higbie, as seller of the Moffat County ranch, was entitled to damages from Johnson, the defaulting purchaser, under the same measure as was applied in favor of Hollingsworth on the Lincoln County property. Therefore, Higbie was entitled to receive from Johnson an amount equal to the contract price less the fair market value as

of date of breach, plus the out-of-pocket expenses which Higbie would not have incurred but for the breach, including interest on the existing encumbrance, interest and costs and attorney fees on a new loan obtained to make the required principal payment on the old loan, insurance, taxes, and lease payments, less oil and gas lease payments.

The court awarded the above referred to out-of-pocket expenses, but also, erroneously, allowed the abstracting costs and attorney fees incurred in preparation for the 1976 closing. Then, instead of granting the difference between contract price and market value, as to which there was evidence on which a finding could have been made, the court awarded interest on the balance of the purchase price (the cash and new note) Higbie would have received had the deal gone through—even though he still owned the property. From the date of the breach, Higbie was entitled to possession. In his complaint, he asked for rental from Hollingsworth and an order requiring him to vacate the premises. Hollingsworth refused to vacate or to pay rent and continued to leave his livestock there and to live on the property until he eventually became the owner. He did not ask for rent from Johnson, and was not entitled to it.

Even if the amount of the interest on the balance of the purchase price for the period between the aborted closing date and the eventual sale was the equivalent of the reasonable rental for that period, *see F. Poss Farms, Inc. v. Miller, supra,* it was Hollingsworth, and not Johnson, who was in possession and had the benefit of the use of Higbie's property. Therefore, not Johnson but Hollingsworth, if anyone, was liable to Higbie for this rental.[1] Insofar as Johnson was concerned, the Moffat County property was available for use or other disposition by Higbie on the date of the breach.

Since the aggregate of the contract price/market value differential and the out-of-pocket expenses will be less than the amount of the judgment in favor of Higbie, that judgment should be vacated and the cause should be remanded for the entry of a new judgment in favor of Higbie consistent with this dissenting opinion.

---

1. The trial court dismissed Higbie's claim for rent against Hollingsworth. Higbie did not appeal this judgment.