No. 13,284.

FRENCH *v.* MITCHELL ET AL.
(22 P. [2d] 644)

Decided April 17, 1933.    Rehearing denied June 5, 1933.

Messrs. Ewing, Arnold & Weinburger, Mr. Fred W. Mattson, for plaintiff in error.

Mr. Louis P. Erny, for defendants in error.

*In Department.*

Mr. Justice Bouck delivered the opinion of the court.

Mr. and Mrs. Mitchell, the defendants in error, instituted a suit against French, the plaintiff in error, to enforce specific performance of a contract which they allege they made with him in April of 1928, for an interest in his lands. The contract, if made, was altogether oral. French denies making it and also relies upon the defense of the statute of frauds, C. L. '21, page 1397, section 5107, which declares such oral contracts void. The Mitchells claim it was taken out of the statute of frauds by part performance, under C. L. '21, page 1397, section 5109. Trial was had to the court and the decree went against French granting the Mitchells the use of a strip of French's land as a roadway.

The Mitchells alleged that by the aforesaid contract French agreed to give them an easement over the aforesaid strip of land, situate in Indian Hills, adjacent to land owned by Mrs. Mitchell. The Mitchells insist that the contract authorized them to use the strip for as long as the Mitchells or either of them should own, or remain on, the place; while French, on the other hand, asserts that they merely had from him a revocable license which he has seen fit to revoke. The complaint also asserts that French contracted to give the Mitchells the easement as the consideration for an agreement on the part of the Mitchells to build a fence at their own expense on the line dividing the two tracts, a distance of seventy-five or eighty-five feet. The evidence for the

Mitchells is meager, indefinite and not specially convincing, but for the purpose of the present review we shall assume that this evidence was true and was accepted as such by the court below, though the record includes evidence introduced on behalf of French which would have to be considered if our conclusion did not make such consideration unnecessary.

The evidence is clear that the Mitchells had decided to enclose their tract with a fence before the alleged conversation with French occurred. No question of a way of necessity is involved, it being admitted that the Mitchells have other routes for getting to and from their land. Mitchell's own estimate of the entire cost of building the fence along the common boundary is fifteen to twenty dollars. The trial judge considered it would cost from five to seven dollars.

"The right of a party who has done acts in part execution of a verbal contract, to call upon a court of equity to enforce it against the other, is subject to the same general restrictions as that of any other plaintiff in equity. * * * It must * * * appear that his position is such that an action at law for damages will not afford him adequate relief. And * * * he must furnish clear and full proof of the contract, so that it may be enforced finally, and with due regard to the rights of all parties concerned." Browne, Stat. Frauds (5th Ed.), p. 576, §452. "Another general rule in regard to the acts relied upon is, that they must appear to have been done in pursuance of the contract alleged. * * * 'It must be such an act done, as appears to the court would not have been done, unless on account of the agreement' or * * * 'an act unequivocally referring to, and resulting from, the agreement.' " Id., p. 577, §454. In *Von Trotha v. Bamberger*, 15 Colo. 1, 15, 24 Pac. 883, 888, this court said: "Eminent counsel and distinguished jurists have battled ingeniously and vigorously for the last two hundred years with cases like this, endeavoring to secure relief under verbal contracts concerning land notwithstanding

the statute of frauds and perjuries. At times they have well-nigh succeeded in repealing the statute, and have often illustrated the saying that 'hard cases make bad precedents.' Nevertheless, the statute has survived these attacks; and the tendency of modern decisions is to maintain its substantial provisions according to its true spirit and purpose, and not to indefinitely multiply exceptions thereto." This tendency continues. The sections above cited from our statute of frauds have remained unchanged since their enactment in 1861 at the first session of our territorial legislature. We deem it our duty to preserve and enforce the statute as a most beneficent law, as important now as ever before. The equity powers expressly recognized therein must be exercised in accordance with the fundamental principles of equity procedure. The case at bar does not involve actual possession and permanent improvements in the usual sense. The building of the fence claimed as part performance was wholly on the Mitchell tract, and seems from the evidence to have been primarily and originally intended for the natural protection and adornment of such a place. The expenditures were trivial. "The circumstances of the case, and the relations of the parties must be such that the loss of his improvements, resulting from a failure to complete the agreement, would be an actual sacrifice on the part of the purchaser." Pomeroy, Specific Performance of Contracts (3d Ed.), p. 329, §129. Even if the evidence had been clear and strong enough to impart life and validity to a contract invalid because verbal, the essential requirements for invoking equity are absent. In view of the foregoing, other serious questions raised by French need not be considered.

Counsel for the Mitchells seems inclined to abandon the alleged cause of action in specific performance by asserting in his brief that it is really nothing but an injunction suit. However, the complaint is labeled "complaint for specific performance" and the trial was on that theory. Moreover, an injunction does not issue for the

protection of an easement unless the title has been duly established and the usual prerequisites of injunctive aid are shown. 1 High on Injunctions (4th Ed.), p. 847, §887. Neither has been done.

The judgment is reversed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BURKE concur.