No. 18,903.

CLAUDE FORREST COULTER, ET AL. *v.*
KELLY B. ANDERSON, ET AL.
(357 P. [2d] 76)

Decided November 14, 1960.

Mr. ROBERT DELANEY, Mr. KENNETH BALCOMB, for plaintiffs in error.

Messrs. HOUTCHENS & HOUTCHENS, Mr. G. V. MARMADUKE, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

SUBMITTED for review in this case is a decree granting specific performance of an alleged agreement to purchase a guest or dude ranch near Rifle, Colorado. The plaintiffs in error were the defendants in the trial court. The suit was instituted by the Andersons, who were the buyers of the property in question, seeking specific performance and damages.

The defendants' answer denied that there was a contract and maintained that the signed agreement relied on by the plaintiffs was merely a memorandum evidencing negotiation progress which looked to further negotiations and ultimately a contract, and due to its vagueness did not justify the granting of specific performance. Defendants also sought damages.

The written document relied on by plaintiffs was executed by all of the parties in the latter part of May 1957. It purported to be an agreement to sell and convey the real estate and personalty of the Coulter Lake Ranch. It described the property and stipulated the buyers' agreement to pay the sellers a total of $100,000, $10,000 of

which would be a down payment, the balance of which would be paid at the rate of $5,000 per year plus a percentage of the gross income. The agreement contemplated immediate possession and operation by the buyers, the execution of a promissory note and deed of trust for the balance of the purchase price, and conveyance of the title by sellers. The remaining provisions of the contract are consistent with its being a binding agreement for the purchase and sale of the ranch.

At the trial, evidence was adduced to show that the plaintiff Lucille J. Anderson met the plaintiff Kelly B. Anderson at this ranch in 1951. He was employed there as a wrangler and she was a guest. They were married in 1953 and spent their honeymoon there. In 1954 they both worked on the ranch during the entire season, including the hunting season in the fall. In December of 1956 defendant Claude Coulter contacted Kelly Anderson at the latter's place of employment, a ranch near Wichita Falls, Texas. He suggested that Kelly Anderson purchase the guest ranch. The negotiations continued in the succeeding months by mail and by telephone and finally the contract in question here was signed in May of 1957. There had been previous drafts submitted by the attorneys for the Weld County Bank at Greeley, Colorado. David H. Jackson, the father of plaintiff Lucille Anderson, was president of this bank and by mutual agreement the bank lawyers were employed to prepare the contract. The Coulters delivered a list of furniture and other personalty, together with two deeds which contained descriptions of the property, to Mr. Jackson for use by the attorneys in preparing the contract. The other details were furnished by the plaintiff Kelly Anderson.

At the time the Coulters signed the agreement in suit, it was pointed out that numerous details had been omitted and apparently the parties were aware of this and were agreeable to a subsequent supplemental contract to embrace the omitted items. These included a

chattel mortgage on the personalty as security for the balance of the purchase price and an agreement to except a 20-acre tract of land from the fee property to be conveyed by the Coulters, which 20-acre tract the defendant was obligated to convey to Elwin Coulter, a nephew. Other terms not included were the location of the exact site for a cabin, the right to which had been reserved in the contract by the Coulters; terms and conditions for the use of electricity, water and gas by the Coulters; provisions for rights of ingress and egress; easements for utilities; furnishing of dairy products by the Andersons to the Coulters; pasturage rights for two horses; fishing rights and a place to store a boat. Notwithstanding that these several items had not been included, Kelly Anderson persuaded the Coulters to sign the agreement, promising that he would furnish a supplemental or additional draft which would supply the omissions and make the corrections required. On this occasion, Claude Coulter scribbled a list of omissions, gave it to Anderson, who agreed to send it to the attorneys.

The evidence also shows that the agreement erroneously included 243 acres of leased land, whereas there was no leased land. The property referred to was 135 acres occupied under special use permits from the United States government. These permits were intended to be transferred to the Andersons.

On the date of execution of the agreement, Mr. Coulter delivered the abstracts to the Garfield County Abstract Company with instructions to bring them up to date and mail them to the attorneys who had prepared the agreement. The court found that the parties had definitely agreed on the details which had been omitted from the contract and specifically found that the 20-acre tract of fee land, although not surveyed, had been pointed out as an exception; that the defendants were entitled to occupy a cabin in accordance with the provision in the agreement without cost to them for the cabin, for water

and electricity, and that the gas was to be metered at the cost price; that plaintiffs had agreed to furnish milk and dairy products when available; that defendants were entitled to fishing privileges and to have a right to keep a boat for fishing on the lake and to have the right to pasture two horses, and that plaintiffs had agreed to execute and deliver a chattel mortgage as additional security for the payment of the balance of the purchase price.

The court further found:

That the plaintiffs went into possession following the execution of the agreement; that an inventory of supplies was taken and that plaintiffs purchased this merchandise separately; that the defendants had acknowledged in response to an inquiry from a third person that the ranch was sold; that plaintiffs had purchased numerous articles, including a station wagon for use in connection with the operation in reliance on the agreement as a subsisting contract to sell. The court also found that the plaintiff Kelly Anderson had helped defendants construct their cabin on the premises; that payments aggregating $8,000 had been made toward the purchase. Plaintiffs operated the resort during the summer and fall of 1957 and defendant Claude Coulter was employed during the hunting season of 1957 and during the summer of 1957, during which time the Coulters were occupying their cabin on the premises.

Relations became strained as a result of differences following a relatively minor incident, the visit of the brother of La Velle Coulter to the ranch. The Andersons charged him for lodging over which Mrs. Coulter became very angry. Between August 7 and 10, plaintiffs tendered to defendants a written supplemental contract providing for chattel mortgage security for the balance of the purchase price. This the defendants refused to sign. In the latter part of October 1957, defendants served a written notice to vacate on the plaintiffs. The trial court concluded that this was without legal

effect and ruled that the act of the Andersons in sur-rendering the keys did not in these circumstances con-stitute an agreement to rescind or abandon the contract.

The trial court concluded that the agreement was at all times one of sale and purchase and not of lease; that there was a meeting of the minds on all essential ele-ments and that it was not necessary to the validity of the contract that it exhaustively provide for every term and condition; that minute details can be supplied by impli-cation.

The trial court carefully considered all of the evidence with respect to credits and charges and made a mone-tary award consistent with its decree of specific per-formance. The court directed that the agreement be re-formed in the respects specified above and agreed to by the parties and, as reformed, that it be specifically en-forced. The counter-claims of the defendants were dis-missed except that defendants were awarded a monetary judgment based upon the balance of the purchase price owing to them.

In support of their contention that the trial court erred, defendants argue that specific performance should not have been decreed because the negotiations had not proceeded beyond a preliminary stage; that there was never a meeting of the minds with respect to essential aspects of the agreement. Consequently the contract was at most a tentative one which was subject to rescission. Defendants further contend that the court erred in de-creeing specific performance for the reason that the precise terms were never agreed upon. Since the court was required to reform, and in some instances to sup-ply omissions, the remedy of specific performance was not available to the plaintiffs and the court erred in re-fusing to hold that the Statute of Frauds, C.R.S. '53, 59-1-8, was applicable.

Finally, it is contended that the contract was aban-doned by mutual consent; that the plaintiffs' conduct disqualified them from equitable relief; that the court

erred in allowing plaintiffs to amend their complaint to conform to the evidence under Rule 15b, R.C.P.

I.  *Was there a contract?*

We are of the opinion that there was ample evidence to support the trial court's conclusion that the parties agreed on the purchase and sale of the property in question.  Apart from the written contract, the following surrounding circumstances support the conclusion that the Coulters intended to sell and that the Andersons intended to buy the property in question on the terms and conditions set forth in the written agreement.

1.  The fact that there were long preliminary negotiations leading to the execution of the document sued on.

2.  The fact that the Andersons moved from Wichita Falls to Rifle, Kelly Anderson giving up his employment in Wichita Falls.

3.  The fact that the Andersons went into actual possession, that abstracts were completed and delivered; that a further additional contract embodying the terms and conditions demanded by the Coulters was agreed upon.

There is virtually no evidence to support the thesis of the defendants that everything was tentative and conditional and that the final consummation of an agreement looked to the ultimate closing and that a meeting of the minds was suspended until such time as a conveyance was actually given.

The only circumstance which gives some semblance of logic to this position is the fact that there were numerous special stipulations which were not included in the agreement of May 27, 1957.  The important thing with respect to this, however, is that there was no disagreement between the parties as to these items.  The Andersons had no quarrel with any of these demands, and the parties did not contemplate further negotiations which would give to either party the option to terminate the contract.  Suffice it to say that the evidence in the case is consistent with the trial court's conclusion that

the parties intended to purchase and to sell the premises in question. The trial court's conclusion as to the reason for the disagreement is also reasonable. The relationship of the parties was subjected to considerable strain occasioned by the presence of the sellers on the premises during the period while the buyers were operating it. It is scarcely surprising that the sellers, who were elderly people, would disagree with the methods used by the Andersons, and it is altogether likely that the Coulters would have liked to have had something to say about the management of the place as a security measure. However, no such provision was included in their agreement. These factors therefore furnish no justification for their subsequent action nor does it lend weight to the Coulters' contention that no contract was in fact consummated.

The only aspect of these negotiations which even suggests a problem is that of incompleteness of the May 27, 1957, agreement. As to this, the law seems clear that this factor will not prevent the creation of a binding obligation. There are two annotations on this subject, the first of which is reported in 122 A.L.R. 1219, the second in 165 A.L.R. 756. Referring to the earlier annotation, the author of the latter one states:

"Many later cases support the general rule (stated in the earlier annotation) that the mere fact that parties to an oral or informal agreement intend that the same shall be reduced to a written or more formal contract will not necessarily prevent present, binding obligations from arising, notwithstanding the contemplated written or formal contract is never drawn up and executed, if the agreement is finally assented to by the parties and covers fully and definitely the terms of the contract; or, as some of the cases, in effect, state the rule, the mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol or informal con-

tract should be without binding force. Various other statements of the rule will be found in the cases cited in the footnote."

See also the discussion which appears at page 759 to the effect that the intention of the parties is the criterion as to whether supplemental stipulations were necessary in order for the contract itself to be binding. To the same effect is the *Restatement of Contracts,* sec. 33, and 12 Am. Jur. 758, sec. 235, *Contracts.*

■ Therefore, where, as here, the future contemplated writing is not a condition precedent to a contract and the parties intend to be bound regardless of a complete writing, a contract must be held to exist.

II. *The propriety of specific performance.*

Defendants' argument that specific performance is not an available remedy is based upon the fact that there were numerous stipulations which had not been reduced to writing at the time that the principal contract was signed. This created, it is said, a condition of vagueness which rendered specific performance unavailable. Therefore the narrow question is whether the equitable remedy of specific performance is limited to fact situations in which a complete agreement has been reduced to writing.

■ Whether a contract was intended by the parties as an integrated one is, as indicated above, a matter of intention. See 3 Williston, *Contracts,* sec. 633, and 3 Corbin, *Contracts,* sec. 581. Where it is shown that a writing was not intended to be fully integrated, terms other than those set forth in the writing may be proved by parol evidence, *Fleming Construction Co. v. Scott,* 141 Colo. 449, 348 P. (2d) 701.

In the case at bar, the writing furnished the basic foundation for the agreement. The most essential of the terms are set forth therein and nothing appears on its face rendering it incomplete. As to the additional matters not expressed in writing, it is noted that the plaintiffs have acceded to each of the demands of the defend-

ants except that which would allow defendant Claude Coulter to supervise the management of the ranch as a security measure. As to this the trial court did not find that plaintiffs had made oral commitments. In these circumstances, we see no grounds justifying denial of specific performance.

It was within the power of the trial court in the exercise of its equity jurisdiction to eliminate the uncertainty which arose from failure to include every detail of the transaction in the written contract. The principle is expressed in the maxim *certum est quod certum reddi potest.*

III. *The Statute of Frauds.*

█ In view of our conclusion that there was a binding contract notwithstanding that some provisions were oral and others were in writing, and consistent with our conclusion that the parties did not intend to postpone a legal meeting of the minds until some future occasion, we must determine that the Statute of Frauds, C.R.S. '53, 59-1-8, is not applicable. The cases relied on by defendants, *Von Trotha v. Bamberger,* 15 Colo. 1, 24 Pac. 883, and *French v. Mitchell,* 92 Colo. 532, 22 P. (2d) 644, are not pertinent.

IV. *The alleged abandonment.*

The evidence of defendants does not establish that the parties agreed to rescission and that the plaintiffs waived their rights by their act of delivery or surrender of the keys to the Coulters. The court found that the notice was ineffective to terminate the contract, the plaintiffs not being tenants subject to this type of notice. This was a correct finding and conclusion.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE KNAUSS concurring.