525 P.2d 494 (1974)
Peronelle BURNFORD, Plaintiff-Appellee,
v.
James C. BLANNING, Jr., Defendant-Appellant.
No. 73-231.
Colorado Court of Appeals, Div. I.
April 16, 1974.
Rehearing Denied May 7, 1974.
Certiorari Granted September 3, 1974.
*495 Charles M. Stoddard, Glenwood Springs, for plaintiff-appellee.
Holland & Hart, James T. Moran, Arthur C. Daily, Aspen, for defendant-appellant.
Selected for Official Publication.
SMITH, Judge.
Defendant-appellant Blanning (seller) appeals from a judgment in favor of plaintiff-appellee Burnford (buyer) granting plaintiff's claim for specific performance of an oral contract to purchase certain land from defendant. We reverse.
On November 15, 1968, defendant entered into a written agreement with plaintiff for the sale of a lot contained within a tract of land owned by defendant in Aspen, Colorado. The purchase price of the lot was $4500, payable $500 on execution of the agreement, $1000 on closing, and the balance to be paid in yearly installments. At about the same time, defendant entered into similar agreements for other lots with several other prospective purchasers not parties to this action.
At the time the several agreements were executed, the entire tract of land was the subject of a quiet title action. Each contract recited this fact, and each was conditioned upon defendant furnishing marketable title within one year of the agreement. Judgment in the quiet title action was entered in favor of defendant, appeal was taken by the opposing party, and the judgment was affirmed by this court on December 29, 1970, more than one year after the agreements were entered into.
Following the appeal, defendant took steps to bring the tract into compliance *496 with Aspen's subdivision regulations. After a hearing before the Aspen Planning and Zoning Commission on February 9, 1971, at which all prospective purchasers and defendant were present, defendant received from the commission a letter setting forth seven conditions to be satisfied before a subdivision plat would be approved and before any lots could be sold therein. One of these conditions required that defendant must demonstrate to the commission that he was in compliance with that portion of the regulation prohibiting the seller's entrance into a contract for sale of any lot within the subdivision until the subdivision had been approved.
On February 12, 1971, defendant and the several purchasers met to discuss the seven conditions. All parties, including plaintiff, understood that the effect of the requirement prohibiting sale of lots prior to subdivision approval was to render the original written agreements unenforceable, an issue not before us, and all agreed that the written agreements should be terminated in order to bring the subdivision into compliance with the regulation. Although plaintiff did not recall the substance of the conversation, other witnesses testified, and the trial court found, that the defendant offered to bring the tract into compliance with the subdivision regulations and then to sell the lots on a cash basis to the same purchasers for $2000 more than the purchase price contained in the original contracts. The trial court found that all of the purchasers, including plaintiff, agreed to this arrangement.
Following this discussion, plaintiff began to question the payment of the additional $2000, which would increase the total purchase price of her lot to $6500. Nevertheless, on August 26, 1971, plaintiff advanced $1000 in addition to the $1000 she gave defendant during the initial phases of the contract. On November 5, 1971, the subdivision plat was approved, and plaintiff received a title insurance commitment for the property. Thereafter, she paid defendant an additional $2000 towards the purchase price. On December 27, 1971, defendant demanded payment of the remaining $2500 due on the purchase price within ten days. Plaintiff promised to try to get the money, and the two agreed to meet again on December 31, 1971, to discuss her attempts. The following day plaintiff consulted with her attorney, who then tendered $500 to defendant as payment in full under the original written agreement, which tender was rejected by defendant with the suggestion that the attorney consult with plaintiff regarding the agreement to pay an additional $2000. Contrary to the previous conversation, no meeting between plaintiff and defendant was held on December 31, and on January 3, 1972, defendant conveyed the property to a third person. The property was reconveyed to defendant following commencement of this suit.
Following trial to the court, specific performance of the February 12th oral contract was granted, and defendant was ordered to convey title to the property to plaintiff upon her payment of the additional $2500. While recognizing that the oral contract was subject to the statute of frauds, C.R.S.1963, 59-1-8, the trial court found that defendant's efforts in bringing the subdivision into compliance with the Aspen subdivision regulations, plus plaintiff's payment of $4000 constituted sufficient partial performance to take the contract out of the statute of frauds and permit specific performance thereof. Defendant urges that these findings and conclusions were erroneous. We agree.

PART PERFORMANCE
First, we hold that it was improper for the trial court to consider the acts of the seller in determining whether there was sufficient part performance to take the oral agreement out of the statute of frauds. In Colorado, the statute may only be asserted by the seller, Garbarino v. Union Savings & Loan Ass'n, 107 Colo. 140, 109 P.2d 638. Few courts have expressly stated the rationale behind the doctrine *497 of part performance. However, those that have seem to accept Professor Corbin's description that the doctrine "is a judicial device to prevent the terms of a formal statute from doing grave injustice." 2 A. Corbin, Contracts § 425. Rather than treating the acts of performance as a substitute for the proof required by the statute of frauds, we view the doctrine as essentially one of equitable estoppel which prevents the statutory requirements from working an injustice on a buyer seeking to enforce an oral agreement where he has detrimentally changed his position in reliance on the seller's oral promise. As stated by the Utah Supreme Court:
"[T]he equitable doctrine of part performance is based on estoppel and unless the acts of part performance are exclusively referable to the contract, there is nothing to show that the plaintiff relied on it or changed his position to his prejudice, so as to give rise to an estoppel." (emphasis added)
In re Roth's Estate, 2 Utah 2d 40, 269 P.2d 278; see Kufta v. Hughson, 46 N.J.Super. 222, 134 A.2d 463; cf. Brown v. Johanson, 69 Colo. 400, 194 P. 943; Knoff v. Grace, 68 Colo. 527, 190 P. 526. See generally Comment, 75 A.L.R. 650. In the present case, the acts of defendant in attempting to bring his land into compliance with the regulations is irrelevant to the question whether plaintiff sufficiently changed her position in reliance upon the oral promise to render the oral agreement enforceable.
Plaintiff further urges that her payment of $4000 was alone sufficient part performance to permit specific enforcement of an oral agreement otherwise unenforceable as falling within the statute of frauds. Although we have found no Colorado case considering the issue posed, the language in our cases discussing the doctrine of part performance leads us to the conclusion that such payment, of itself, is insufficient.
As noted above, the doctrine of part performance is based upon equitable principles to avoid the effect of the statute of frauds where grave injustice would otherwise result to the buyer. One of the principal determinants in granting specific enforcement of an oral contract for the sale of land on the basis of part performance is whether the buyer seeking to enforce the contract has so altered his position through part performance of the contract in reliance upon the oral promise that no remedy at law will put him in the same position he was in prior to entrance into a contract which is unenforceable because of the statute of frauds. The courts in Colorado have recognized and adopted this view. In Mestas v. Martini, 113 Colo. 108, 155 P.2d 161, our Supreme Court adopted the following language:
"The right of a party who has done acts in part execution of a verbal contract, to call upon a court of equity to enforce it against the other, is subject to the same general restrictions as that of any other plaintiff in equity.... It must... appear that his position is such that an action at law for damages will not afford him adequate relief. (emphasis added)
See also French v. Mitchell, 92 Colo. 532, 22 P.2d 644.
In Armstrong v. Kattenhorn, 11 Ohio 265, the court, having expressed the above rule, stated:
"The situation of the parties must be so changed that the enforcement of the contract, alone, can furnish adequate relief.
"Hence, the mere payment of the purchase money will not avoid the statute, because its recovery back is regarded as full compensation. But delivery of possession, in performance of the contract, avoids its [statute of frauds'] operation."
Although the language in Mestas referred to damages, it is clear that an adequate remedy, in the present context, is one which provides substantial justice for the plaintiff. See 2 A. Corbin, Contracts § 427. The great majority of courts, therefore, have held that payment of money alone, is not part performance sufficient to take the oral contract for the sale of land *498 out of the statute of frauds. See, e.g., Trout v. Ogilvie, 41 Cal.App. 167, 182 P. 333; Winans v. Bloomer, 321 Ill. 76, 151 N.E. 599; Kufta v. Hughson, supra; Scheuer v. Cochem, 126 Wis. 209, 105 N. W. 573. We join with that majority.

TERMINATION OF THE ORIGINAL AGREEMENT
Plaintiff argues that if the oral contract is unenforceable, the cancellation of the written contract occurring at the February 12th meeting should be ineffective and that the written agreement should be considered revived and specific performance granted thereon.
Counsel has not cited, nor have we found case law which applies to the particular facts of this case. Our Supreme Court has held that a written contract for the sale of land may be rescinded by subsequent oral agreement. Niernberg v. Feld, 131 Colo. 508, 283 P.2d 640. However, where a rescission of the written contract is effected by a novation, that is, by a substitution of an oral agreement for the written contract, commentators have suggested that not only the positive terms of the oral agreement, but the rescission of the prior written contract should be unenforceable. See Firth, A Doubt on the Statute of Frauds, 9 L.Q.Rev. 366; Note 40 Harv.L. Rev. 327. The rationale behind the rule appears to be that the plaintiff would not have given up his rights under the enforceable written contract except on the assumption that he could enforce the new rights under the oral contract so substituted. L. Simpson, Law of Contracts § 91 (2d ed).
However, where the written agreement is rescinded not by novation but by an agreement to rescind independent of any new oral contract, the oral rescission should be effective even through the new oral contract is unenforceable. See 2 A. Corbin, supra § 312. We believe this latter principle is applicable to the case at bar.
The uncontradicted testimony of disinterested witnesses, with the exception of plaintiff, who was unable to recollect the discussion, attending the February 12th meeting was that all parties agreed that the written agreements were unenforceable, either because the time for performance had lapsed or because the agreements were rendered unenforceable by the subdivision regulation. Thereafter, defendant offered to sell the same lots to the respective purchasers for the equivalent of the original purchase price plus $2000, if and when the subdivision was brought into compliance with the regulations. Based upon these agreements to cancel defendant applied to the Planning and Zoning Commission for subdivision approval, representing that there were in existence no valid contracts to sell. This was done with full knowledge and consent of the plaintiff and the other prospective purchasers. As a matter of law, the only reasonable conclusion to be drawn from this evidence is that the agreement of plaintiff to cancel the written contract was totally independent of defendant's subsequent oral offer to sell the land after approval of the subdivision plat. Therefore, failure of the subsequent oral agreement had no effect on the cancellation of the prior written contract.
Inasmuch as there exists no valid enforceable agreement between the parties, the judgment of the trial court decreeing specific performance is in error, and plaintiff is entitled to a return of her money in accordance with the tender made by defendant in his answer.
The judgment is reversed and the cause remanded for entry of a judgment for plaintiff not inconsistent herewith.
SILVERSTEIN, C.J., and COYTE, J., concur.