**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 16 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

THE GATES CORPORATION, d/b/a The Gates
Rubber Company; THE GATES RUBBER
COMPANY, a Colorado corporation,

    Plaintiffs-Appellants,

v.

BANDO CHEMICAL INDUSTRIES, LTD., a
Japanese company; BANDO AMERICAN, INC.,
an Illinois corporation; BANDO
MANUFACTURING OF AMERICA, INC., a
Kentucky corporation; BANDO, U.S.A., INC., a
Delaware corporation; STEVEN R. PIDERIT, an
individual; RON NEWMAN, an individual; JOHN
DOES 1-94; GARY KESSINGER,

    Defendants-Appellees.

No. 99-1272
(D. Colo.)
(D.Ct. No. 92-S-136)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY**, **McKAY**, and **KELLY**, Circuit Judges.

_____

After years of contentious litigation dating back to 1992, representatives of

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, _res judicata_ and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the parties [1] met to discuss settlement of this case. During their second day of meetings, they signed a one-page Memorandum of Understanding ("Memorandum"). Defendants filed a motion to enforce the purported settlement agreement. Defendants claimed the Memorandum represented a binding agreement to settle this case and argued the essential terms were sufficiently definite to constitute an enforceable contract. Plaintiffs responded the Memorandum was unenforceable, because it contained indefinite material terms and was merely an agreement to agree. Applying Colorado law, the district court granted the motion to enforce without holding an evidentiary hearing. This appeal followed.

---

[1] Plaintiff The Gates Corporation, a Delaware corporation, is doing business as plaintiff The Gates Rubber Company, a Colorado corporation. The Gates Corporation became a wholly owned subsidiary of Tomkins PLC in 1996.

Defendant Bando Chemical Industries, Ltd. is the parent of defendant Bando U.S.A., Inc., which in turn is the parent of defendants Bando American, Inc. and Bando Manufacturing of America, Inc. Individual defendants Steven R. Piderit, Ron Newman, and Gary Kessinger were formerly employed by plaintiffs and subsequently employed by one of the corporate defendants. *See Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 99, 116 (D. Colo. 1996) (noting Mr. Piderit and Mr. Newman were hired away from plaintiff Gates Rubber by the chief executive officer of Bando American, and describing Mr. Kessinger as an employee of plaintiff Gates Rubber who left to go work for one of the corporate defendants); *see also Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 830 (10th Cir. 1993) (identifying Messrs. Newman and Piderit as former employees of plaintiffs).

I.  Background

Plaintiffs and the corporate defendants compete in the manufacture and sale of rubber belts for use in industrial machinery. *See Gates Rubber Co.*, 9 F.3d at 830. The focus of this lawsuit, which was filed over eight years ago, appears to be two computer programs created by plaintiffs called "Design Flex 4.0" and "Life in Hours." *See Gates Rubber Co.*, 167 F.R.D. at 99. Design Flex 4.0 handles complicated calculations involving numerous variables to determine the proper belt for a customer's machine, thereby increasing the efficiency and accuracy of belt selection. *See* 9 F.3d at 830. Similarly, Life in Hours identifies the expected number of performance hours for a particular belt. *See* 167 F.R.D. at 99. Plaintiffs consider these two programs highly valuable, because they significantly reduce the human error involved in belt selection and performance expectation, as well as speed the sales process. *See* 9 F.3d at 830; *see also* 167 F.R.D. at 99. Plaintiffs claim, *inter alia*, the individual defendants took copies of these programs with them to the corporate defendants, which in turn created substantially similar computer programs for use by their sales forces. Specifically, plaintiffs state defendants' "Chauffeur" and "AADD" computer programs are substantially similar to "Design Flex 4.0" and "Life in Hours," respectively. In their Fifth Amended Complaint, plaintiffs bring causes of action for copyright infringement, Lanham Act violations, patent infringement, Paris

Convention for the Protection of Industrial Property violations, Colorado

Consumer Protection Act violations, unfair competition, misappropriation of

trade secrets, breach of contract, and rights in stolen property.

II. Procedural History [2]

The district court described this case as having "a long and difficult

history" resulting in "millions of dollars in litigation expenses." Order dated

May 18, 1999, at 1. In an effort to settle the case, Ian Duncan, Deputy Chairman

and Managing Director, Finance, of Tomkins PLC representing plaintiffs, and

Shogo Sasabe, President of Bando Chemical Industries, Ltd. representing

defendants, met in London, England and engaged in two days of settlement

discussions. Messrs. Duncan and Sasabe ultimately signed the Memorandum,

which: (1) lists the nine terms as to which they "have reached agreement"; and

(2) states they "have agreed in principle to settle" this case, have the authority to

settle this case, and "intend this Memorandum to be a binding, legally

---

[2] Because this appeal focuses on the district court's analysis in enforcing the purported settlement agreement, we refer the reader to the four published opinions in this case for further detail regarding the procedural history of the underlying litigation. *See Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823 (10th Cir. 1993), *aff'g in part and vacating in part*, *Gates Rubber Co. v. Bando Am., Inc.*, 798 F. Supp. 1499 (D. Colo. 1992); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90 (D. Colo. 1996); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 855 F. Supp. 330 (D. Colo. 1994).

enforceable agreement."

Over a year later, defendant Bando Chemical Industries, Ltd. filed its motion to enforce the purported settlement agreement on behalf of all defendants. Defendants stated the Memorandum reflected the parties' unambiguous agreement to the two essential elements of a settlement agreement: (1) exchange of money, and (2) a release. In their response, plaintiffs claimed the Memorandum was unenforceable because it contained indefinite material terms (*i.e.*, "3. Future technology issues"), and its language reflected it was merely an agreement to agree. The district court heard oral argument on the motion, but, with the parties' consent, did not conduct an evidentiary hearing.

Utilizing Colorado law, the district court stated in its May 18, 1999 Order: "The primary determination that must be made is whether the terms are specific enough to constitute a contract and if the parties intended it to be a binding contract." Order dated May 18, 1999, at 2 (citing *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 410 (10th Cir. 1996) (applying Colorado law)). The district court concluded the Memorandum constituted an enforceable contract the "purpose of [which] is to settle this case," and granted defendants' motion to enforce it. Order dated May 18, 1999, at 3; *see id.* at 2-5.

Specifically, the district court held the Memorandum contained a settlement agreement with seven "essential terms," paraphrased as follows:

> 1. Each individual signing the [Memorandum] has authority to sign for the party he is representing.
>
> 2. The individuals, on behalf of the parties they represent, have reached an agreement.
>
> 3. Mutual, general releases shall be drafted in the broadest legal terms possible.
>
> 4. Consideration will be paid for the release of claims.
>
> 5. This case, including all counterclaims, will be dismissed.
>
> 6. [Bando Chemical Industries, Ltd.] will acknowledge this Court's prior ruling regarding the misappropriation of intellectual property belonging to Gates [Rubber Company].
>
> 7. The [Memorandum] is a binding legally enforceable agreement.

*Id.* at 2; *see id.* at 3. The district court concluded:

> [These] essential terms are sufficiently specific and they indicate clear evidence of the intent to be bound by this contract. The detail in those elements also belie [plaintiffs'] argument that the [Memorandum] is only an agreement to agree....
>
> In addition, it is undisputed that, pursuant to the terms of the [Memorandum], [Bando Chemical Industries, Ltd.] began performance by depositing payment of the sum required by the [Memorandum] into an escrow agreement. This is also evidence of intent to be bound by the [Memorandum].

*Id.* at 3.

In reaching its decision, the district court concluded the Memorandum's third "term" – "[f]uture technology issues" – was not essential to the settlement agreement:

> As a preliminary matter, the future technology issue is not essential to this agreement. The purpose of the [Memorandum] is to settle this case. That means that it must dispose of all claims in the Fifth Amended Complaint. The [Memorandum] need not determine all issues that may arise between these parties in perpetuity. Indeed it does not in any way purport to control the future business dealings between the parties. That is not necessary to settle this case. With that understanding, the phrase "future technology issues" can be examined in two ways. If it means issues about future technology that are covered by claims in the Fifth Amended Complaint, they will be dismissed pursuant to this settlement agreement. Those issues will therefore be moot due to the dismissal of the case.
>
> The phrase can also mean issues about future technology which will arise sometime in the future and are unrelated to the Fifth Amended Complaint. Those issues, while they may be important in the future relationship between these parties, are not relevant to settlement of this case. Consequently, the future technology issue, while it may be ambiguous in relation to those future issues not covered by the Fifth Amended Complaint, is not ambiguous as it relates to settlement of the present case. In other words, it is only ambiguous to the extent that it is not essential to the purpose of the [Memorandum], settling this case.

*Id.* at 3-4.

On appeal, plaintiffs claim the district court erred in three ways: (1) determining the term "[f]uture technology issues" was not essential to the

settlement agreement; (2) failing to find the term "[f]uture technology issues" indefinite after finding it uncertain; and (3) concluding the Memorandum was not an agreement to agree. Defendants claim the "[f]uture technology" term is not essential to the settlement agreement, which moots the issue whether it is indefinite. Defendants argue the Memorandum reflects the parties' unequivocal intent to be bound by its terms, which means it is not an agreement to agree.

## III. Jurisdiction

We have "jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. This court issued a show cause order questioning our appellate jurisdiction, because the district court did not enter a judgment or dismissal order in this case. *See* Fed. R. Civ. P. 58. [3] The issue is whether the district court's order granting defendants' motion to enforce is a final decision under § 1291. After briefing, the jurisdictional issue was referred to this panel for disposition. The parties argue the district court's order is final and we have appellate jurisdiction. We agree.

---

[3] "To eliminate uncertainty as to the finality of district court decisions and ease appellate jurisdictional review, we encourage all district courts to comply with Rule 58's separate document requirement in every proper instance." *Burlington N. R.R. Co. v. Huddleston*, 94 F.3d 1413, 1416 n.3 (10th Cir. 1996).

A final decision ends the litigation and "leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945); *see Albright v. UNUM Life Ins. Co.*, 59 F.3d 1089, 1092 (10th Cir. 1995). In other words, it reflects "the termination of all matters as to all parties and causes of action." *D&H Marketers, Inc. v. Freedom Oil & Gas, Inc.*, 744 F.2d 1443, 1444 (10th Cir. 1984) (en banc). Our analysis is governed by "the substance of the district court's decision, not its label or form." *Albright*, 59 F.3d at 1092. The absence of a Rule 58 judgment will not prohibit appellate review if the district court decision is unquestionably final. *See Burlington N. R.R.*, 94 F.3d at 1416 n.3.

In its order, the district court: (1) held the Memorandum constituted an enforceable contract, which reflected the parties' agreement to dismiss this case, including all counterclaims; and (2) granted defendants' motion to enforce the agreement. In other words, the district court ordered the enforcement of a settlement agreement requiring dismissal of the instant case. Although it would have been preferable for the district court to enter judgment dismissing plaintiff's action as settled based on its order, *see Heuser v. Kephart*, 215 F.3d 1186, 1189 (10th Cir. 2000), the order terminated all matters as to all parties and causes of action for all practical purposes, and it left nothing for the district court to do but

execute judgment. *See Catlin*, 324 U.S. at 233; *D&H Marketers*, 744 F.2d at 1444. Accordingly, the district court's May 18, 1999 Order is a final decision, and we have appellate jurisdiction.

IV. Standard of Review

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). We review the district court's enforcement of a purported settlement agreement for an abuse of discretion. *See Heuser*, 215 F.3d at 1190; *Hardage*, 982 F.2d at 1495. An abuse of discretion occurs when the district court "based its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990) (quotation marks and citations omitted). [4]

___

[4] Plaintiffs argue for a de novo standard of review with no deference to the district court's order in light of the Memorandum and this court's statement in *Valley Nat'l Bank v. Abdnor*, 918 F.2d 128 (10th Cir. 1990) "the appellate court is in as good a position as the trial court to interpret a written document." *Id.* at 130. *Valley Nat'l Bank* is inapposite, because, as we discuss in more detail *infra* note 6, the question here is not one of contract interpretation, but one of contract formation. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 & n.6 (Colo. 1986) (en banc).

V. Discussion

Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law, *see United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000), even when there are federal causes of action in the underlying litigation. *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). *But see Snider v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir. 1991) (holding settlement agreements in Title VII cases are governed by federal common law because the agreements and the statute are "inextricably linked"). Colorado public and judicial policies favor voluntary agreements to settle legal disputes. *See Colorado Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo. 1992) (en banc); *Davis v. Flatiron Materials Co.*, 511 P.2d 28, 32 (Colo. 1973) (en banc). However, a court may enforce a settlement agreement only if it constitutes an enforceable contract. *See H.W. Houston Constr. Co. v. District Ct.*, 632 P.2d 563, 565 (Colo. 1981) (en banc); *Recreational Dev. Co. of Am. v. American Constr. Co.*, 749 P.2d 1002, 1005 (Colo. Ct. App. 1987).

This is a contract formation case presenting the issue whether the Memorandum created an enforceable contract between the parties to settle this case or is merely an agreement to agree. As the district court held, our task is to

appraise the Memorandum to determine: (1) if the parties intended it to be a binding contract; and (2) if its terms are specific enough to constitute a contract. *See New York Life*, 80 F.3d at 409 (applying Colorado law).

A. Intent of the Parties

In the case of a writing, courts must look primarily to the face of the writing itself to determine the parties' intent. *See New York Life*, 80 F.3d at 409-11. A written document reflects the parties' intent to contract when it identifies the consideration for which the parties bargained and contains their signatures. *See Pierce v. St. Vrain Valley Sch. Dist.*, 981 P.2d 600, 603 (Colo. 1999) (en banc) (noting the written settlement agreement satisfied the basic elements of contract formation when it identified the consideration for which the parties bargained and contained the parties' signatures). In contrast, a written document is characterized as an agreement to agree when the parties were "only settling the terms of an agreement into which they formally proposed to enter after all its particulars had been adjusted, and by which alone they intended to be bound." *Pierce v. Marland Oil Co.*, 278 P. 804, 806 (Colo. 1929). However, an intention to reduce an agreement to a more formal writing "'is not of itself sufficient to show that the parties intended that until such formal writing was executed the ... informal contract should be without binding force.'" *I.M.A.*, 713 P.2d at 888

(quoting *Coulter v. Anderson*, 357 P.2d 76, 80 (Colo. 1960)). "Whether or not the parties have completed their negotiations, or whether they designed that their agreement should be expressed in a formal written contract, is always dependent upon the circumstances of the particular case." *Marland Oil*, 278 P. at 806.

Upon consideration of the Memorandum's language and the circumstances of this case, the district court concluded the parties intended to enter a binding contract, the "purpose of the [Memorandum] is to settle this case," and the Memorandum does not constitute an agreement to agree. We hold the district court did not abuse its discretion in reaching these conclusions, because there is a rational basis in the evidence for the ruling. *See Wang*, 919 F.2d at 130.

First, the Memorandum identifies nine terms as the consideration for which the parties bargained, and it clearly states "the parties have reached agreement" on them. *See St. Vrain Valley Sch. Dist. RE-1J*, 981 P.2d at 603. Second, the Memorandum explicitly states Messrs. Duncan and Sasabe "have the authority to settle" this lawsuit, and they both signed the Memorandum. This indicates their mutual assent to the nine terms listed. *See id.*[5]

_____

[5] These two reasons remove this case from the agreement to agree paradigm, which usually involves: (1) correspondence, (2) written and signed by only one of the parties, and (3) containing open terms. *See New York Life*, 80 F.3d at 409; *Marland Oil*, 278 P. at 805-06. For example, in *New York Life*, this court held a letter regarding the

Third, the statements in the Memorandum indicating the parties "have agreed in principle to settle" this case and intend to prepare and execute a more formal writing in the form of a "final settlement agreement" does not prevent the Memorandum from having binding force without some other indication the parties did not intend it to have such force. *See I.M.A.*, 713 P.2d at 888. There is no such other indication. To the contrary, the Memorandum explicitly states "[t]he parties intend this Memorandum to be a binding, legally enforceable agreement." We must abide by this statement of intent. *See id.*; *Marland Oil*, 278 P. at 806. Finally, the district court's conclusion was informed by the circumstances before it, specifically: (1) the December 1997 London meetings were pursuant to an agreement between the parties to attempt to settle this case, and (2) defendants began performance by depositing settlement funds into escrow as required by the Memorandum. *See* Order dated May 18, 1999, at 1-3 (holding this evidenced an intent to be bound by the Memorandum). We will not substitute our judgment for that of the district court under the abuse of discretion standard of review, *see Florida v. Kerr-McGee Corp., (In re Coordinated Pretrial Proc.)*, 669 F.2d 620, 623 (10th Cir. 1982), especially when the district

---

sale of corporate notes constituted an unenforceable agreement to agree. *See New York Life*, 80 F.3d at 410-11. Specifically, the letter left open the interest rate and maturity date of the notes (*i.e.*, "__% Senior Note(s) due __"), and was phrased in the future subjunctive (*i.e.*, it stated the sale of the notes remained subject to approval by one of the parties). *See id.* at 411. In this case, none of these problems exists.

court's familiarity with the parties and their efforts to settle this case is based on over seven years of supervising this lawsuit.    *See* Order dated May 18, 1999, at 1.


B.  Specificity of the Memorandum's Terms

The Memorandum must be "definite" in its essential terms to be an enforceable contract.    *See New York Life* , 80 F.3d at 409.  The Colorado Supreme Court explained:

A contract is an agreement 'to do or not to do a particular thing.'

If essentials are unsettled, and no method of settlement is agreed upon, there is no contract.

....

If the writing leaves the agreement of the parties vague and indefinite as to an essential element thereof, it is no contract and cannot be made one by parol.

If subject matter and consideration be not clearly defined, a contract is void for indefiniteness ....

*Greater Serv. Homebuilders' Inv. Ass'n v. Albright*    , 293 P. 345, 348-49 (Colo. 1930) (en banc) (quotation marks and citations omitted).    [6]  Essential terms are

---

[6]  These rules are distinguishable from those applicable to contract interpretation cases.  *See I.M.A.*, 713 P.2d at 888 & n.6.  A contract interpretation case is predicated on the existence of an established contract, and, where a written contract is at issue, focuses on whether there exists any ambiguity in its terms.  *See Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000) (en banc) ("Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to the their plain language....  Terms used in a contract are ambiguous when they are susceptible to more than one reasonable interpretation.").  The question in

"determined from the intention of the parties as disclosed upon consideration of all surrounding facts and circumstances there prevailing." *American Mining Co. v. Himrod-Kimball Mines Co.*, 235 P.2d 804, 807 (Colo. 1951) (en banc).

In this case, the Memorandum's nine terms are settled and definite in that none are left open, none are inherently contradictory, and each addresses a unique subject matter. *See Greater Serv. Homebuilders' Inv.*, 293 P. at 348-49. Even so, to the extent a dispute arises regarding one of the nine terms, the Memorandum provides a method of settlement in that such disputes will be referred to Messrs. Duncan and Sasabe for resolution. *See id.* at 348 (stating an unsettled essential term is of itself insufficient to find there is no contract; the writing must also lack a method of settlement).

Plaintiffs focus on the district court's recitation of two different potential meanings to the "[f]uture technology issues" term as proof this term is indefinite. We disagree with this argument and believe plaintiffs are confusing definiteness, a contract formation question, with ambiguity, a contract interpretation question.

---

this case is whether a contract was formed, so any potential ambiguity in one of the Memorandum's terms is immaterial to our resolution of this appeal. *See Greater Serv. Homebuilders' Inv. Ass'n*, 293 P. at 349. Rather, we are concerned with whether any of the Memorandum's terms are indefinite, and, if so, whether the indefinite term is essential. *See id.* at 348-49.

*See supra* note 6.  The Colorado Supreme Court has drawn a distinction between indefiniteness and ambiguity as to a term, specifically holding parol evidence cannot cure the former but can explain the latter.  *See Greater Serv. Homebuilders' Inv.*, 293 P. at 348-49.  Therefore, a term's susceptibility to more than one reasonable interpretation simply means it is ambiguous, *see Ad Two*, 9 P.3d at 376, which does not prevent the formation of an enforceable contract.  *See Greater Serv. Homebuilders' Inv.*, 293 P. at 348-49.  In this case, the parties reached agreement as to "[f]uture technology issues," and should be required to perform accordingly. [7]

---

[7]  We note the affidavits of Messrs. Duncan and Sasabe on the meaning of the term and their intent in including it in the Memorandum are not necessarily different or inconsistent.  In pertinent part, Mr. Duncan's affidavit states "[t]he term was intended to address what [plaintiffs'] technology the [defendants] could use, if any, what amount of compensation [defendants] would pay for any future use, and how [defendants'] use or nonuse of [plaintiffs'] technology would be policed."  Mr. Sasabe's affidavit states defendants were "not intending to use any technology obtained either through the [former] employees [of plaintiffs] or other discovery information.  Mr. Duncan suggested that a committee could meet and discuss this issue.  I agreed to that suggestion.  On the morning of December 11, 1997, we confirmed this agreement.  Paragraph 3 of the [Memorandum] is a reference to this agreement.  We did not discuss paragraph 3 as a way to calculate future royalties.  All payment of money was covered by [two other terms in the Memorandum]."  Nonetheless, should either party subsequently question the "[f]uture technology" term's meaning, we note the issue whether a term is ambiguous is a question of law, while the interpretation of an ambiguous term is a question of fact to be resolved by the district court after an evidentiary hearing.  *See Republic Res. Corp. v. ISI Petroleum West Caddo Drilling Program 1981*, 836 F.2d 462, 465-66 (10th Cir. 1987) (holding the issue whether a contract term is ambiguous is a question of law, but the interpretation of an ambiguous contract is a question of fact); *Chicano Police Officer's Ass'n v. Stover*, 624 F.2d 127, 131-32 (10th Cir. 1980) (requiring the district court to conduct an evidentiary hearing to address the ambiguity concerning the intended scope of a payment term in an established settlement agreement); *Pepcol Mfg. Co. v. Denver*

Plaintiffs also argue this court should impose a "no reasonable doubt" from the face of the Memorandum standard, as identified in *Mestas v. Martini*, 155 P.2d 161, 166-67 (Colo. 1944) (en banc), to determine whether the "[f]uture technology issues" term is indefinite. Although *Mestas* is factually distinguishable in that it addressed the rules surrounding an action for "the specific performance of a parol contract for the sale of land," *Mestas*, 155 P.2d at 164, application of this standard would not change the result in this case. Even assuming for purposes of argument the "[f]uture technology issues" term is indefinite under this standard, we hold the district court did not abuse its discretion in concluding this term is not essential.

We have already upheld the district court's conclusion the Memorandum was intended by the parties to be a binding agreement to settle this case. The essential elements of an agreement to settle a case are a manifestation of agreement (an offer and acceptance) on payment, release, and case dismissal terms (the consideration) between parties who have the capacity and authority to agree. *See Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985) (holding the parties' agreement on defendant's payment of a sum certain in

*Union Corp.*, 687 P.2d 1310, 1314 (Colo. 1984) (en banc) ("Whether an ambiguity exists is also a question of law.... Once a contract is determined to be ambiguous, the meaning of its terms is generally an issue of fact to be determined in the same manner as other disputed factual issues.") (quotation marks and citation omitted).

exchange for plaintiff's general release of all claims and dismissal of the lawsuit constituted an enforceable settlement contract); *Citywide Bank of Denver v. Herman*, 978 F. Supp. 966, 977 (D. Colo. 1997) ("The essential elements of a settlement agreement are a definitive offer and acceptance, consideration and parties who have the capacity and authority to agree.") (quotation marks and citation omitted).

Upon consideration of the surrounding facts and circumstances, the district court concluded seven of the Memorandum's terms – not including the "[f]uture technologies" term – met these essential elements. *See supra* Part II. There is a rational basis in the evidence for this ruling. First, the Memorandum and the parties' signatures reflects their manifestation of agreement to settle this case. Second, regarding consideration, the seven terms identified by the district court provide for the payment of money in exchange for the execution of mutual, general releases and dismissal of the case, including all counterclaims. Third, in the Memorandum, Messrs. Duncan and Sasabe state they have the authority to sign for the plaintiffs and defendants, respectively, they reached agreement on the terms listed, and they intended it to be a binding, legally enforceable agreement. We simply will not derail a settlement agreement expressly resolving payment, release, and dismissal terms because of alleged disputes over additional terms.

*See Sheng v. Starkey Lab., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997) ("The fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement.").

Finally, we note some language in plaintiffs' briefs indicating their belief the district court's ruling means defendants need only perform the essential terms of the Memorandum. This is incorrect. "Parties to a contract ... may agree on whatever terms they see fit so long as such terms do not violate statutory prohibitions or public policy." *Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998) (en banc). Neither party claims the Memorandum's nine specifically enumerated terms violate any Colorado statute or public policy, which means courts must respect their decision to settle on these terms. *See id.* Accordingly, the parties must perform each of the Memorandum's nine terms. *See generally St. Vrain Valley Sch. Dist. RE-1J*, 981 P.2d at 603-607 (enforcing the confidentiality provisions of a settlement agreement after holding they did not violate the First Amendment or Colorado public policy).

VI. Conclusion

We **AFFIRM** the district court's May 18, 1999 Order concluding the

Memorandum constitutes an enforceable settlement agreement under Colorado law.

Entered by the Court:

**WADE BRORBY**
United States Circuit Judge